621 P.2d 298

## In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. J–90110.

### No. 1 CA–JUV 144.

Court of Appeals of Arizona,
Division 1,
Department A.

Nov. 20, 1980.

Review Denied Dec. 16, 1980.

Charles F. Hyder, Maricopa County Atty. by Judith C. Ruhl O'Neill, Deputy County Atty., Phoenix, for the State.

Ross P. Lee, Maricopa County Public Defender by Dennis C. Freeman, Deputy Public Defender, Phoenix, for appellant Juvenile.

Robert K. Corbin, Atty. Gen. by Rory C. H. Abate, Asst. Atty. Gen., Phoenix, Amicus Curiae.

## OPINION

CONTRERAS, Judge.

The juvenile-appellant appeals the order of the juvenile court judge committing him to the Department of Corrections until he reaches the age of 18 years unless sooner released pursuant to law. His appeal is based on the contentions that (1) his incarceration for a period of six to twenty-one months is unconstitutional; (2) he was not given credit for presentence incarceration; (3) his plea was involuntary because he was

not advised of special sentencing provisions; and (4) the sentence was excessive. These contentions will be discussed in the order presented after setting forth the procedural sequence of events.

Appellant was charged by petition dated November 1, 1979, with assault, a class three misdemeanor, in violation of A.R.S. §§ 13–1203(A)(3) and (B), –707 and –802. At the advisory hearing on January 9, 1980, appellant admitted the allegations of the petition and was adjudicated delinquent. Juvenile court Judge Rose approved the referee's report on January 23, 1980, and disposition was set for May 7, 1980. Appellant was released pending disposition. On May 7, 1980, a public defender was appointed and disposition was continued until May 22, 1980. Appellant was again allowed to remain released; however, conditions were imposed for his continued release. The conditions were that he obey reasonable directions of his father, attend school regularly, not use marijuana or alcohol, and stay in contact with his probation officer. On May 22, 1980, the date set for disposition, the juvenile court judge ordered the probation officer to submit the appellant's records to a residential treatment facility to determine if it would accept appellant for placement. On the same day, the judge found that appellant had violated the conditions of his release and ordered appellant detained until his disposition hearing, which was rescheduled for June 12, 1980. The disposition hearing was accelerated and was conducted on June 5, 1980. At the conclusion of the hearing, juvenile court Judge Rapp entered an order committing appellant to the State Department of Corrections until he reaches the age of 18 years unless sooner released pursuant to law. At the time of commitment, appellant was 16 years of age.

■ Appellant first contends that Arizona's indeterminate commitment scheme for juveniles is unconstitutional. He argues that his commitment to the State Department of Corrections for a term possibly extending to twenty-one months when the sentence for an adult conviction for the same offense is thirty days and/or a fine violates his equal protection and due process guarantees under the United States Constitution. Despite appellant's contention to the contrary, the indeterminate commitment scheme for a juvenile is not unconstitutional for the fundamental reason that the juvenile system still has rehabilitation as its primary goal, not punishment. To this end, the legislature has given the State Department of Corrections the authority to assign the juvenile to an appropriate institution based upon a diagnostic evaluation and the further authority to give the juvenile an absolute discharge or a conditional release when it appears that the juvenile is rehabilitated. A.R.S. §§ 41–1609(C), –1608. The length of confinement necessary to achieve this goal is dependent upon a number of factors that cannot be determined by the juvenile court judge at the time of commitment. Therefore, an indeterminate length of commitment is necessary. This difference in treatment of juveniles and adults is based on a reasonable classification and, in an attempt to achieve the goal of rehabilitation, the indeterminate commitment scheme has been and is still a recognized legitimate means. *In re Appeal, in Maricopa County Juvenile,* 124 Ariz. 377, 604 P.2d 641 (1979), *cert. denied,* 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed.2d 245 (1980); *In re Appeal in Maricopa County Juvenile Action,* 125 Ariz. 532, 611 P. 2d 119 (App.1980); *In re Appeal in Maricopa County Juvenile Action,* 125 Ariz. 227, 608 P.2d 804 (App.1980). We therefore reject appellant's disparate treatment argument.

■ In conjunction with his attack on the concept of indeterminate commitment, appellant further contends that new procedures adopted by the juvenile division of the Arizona Department of Corrections are not consistent with a rehabilitative goal. The procedures to which he refers are the Length of Programming Guidelines which, in part, make reference to the sentencing framework for adults under the present adult criminal code. The Guidelines recommends minimum and maximum lengths of institutionalization in an effort to insure

that the length of stay within a juvenile institution is related to the severity of the offense and also to insure that the minimum length of recommended institutionalization is the time necessary for an average juvenile to demonstrate therapeutic progress. Appellant contends that this scheme focuses on the severity of the offense and the average juvenile, rather than the rehabilitative needs of the individual offender. We do not agree.

A brief outline of the history and development of the Guidelines is helpful for a full understanding and appreciation of its objectives.[1] In April, 1979, the Director of the Arizona Department of Corrections formed the Advisory Planning Committee for Juvenile Services. The committee membership included judges, state legislators, law enforcement representatives, criminal justice specialists and private citizens. At the recommendation of the committee, a clinical psychologist and the director of the Diagnostic Center for Juvenile Services developed the Length of Programming Guidelines in an effort to remedy certain inequities in the existing juvenile rehabilitation program. One of these inequities was that in numerous instances more serious offenders served shorter terms of commitment simply because they adapted to institutionalization more readily than did their less mature, more rebellious but less serious offender counterparts.

In developing the Guidelines, the advisory planning committee took a number of factors into consideration. They considered (1) the length of institutionalization should be related to the severity of the offense; (2) the length of institutionalization should reflect the chronicity of the juvenile's criminal activity; (3) the maximum length of institutional confinement should not be longer than that required for therapeutic impact; (4) the minimum length of institu-tionalization should reflect the minimum time necessary for the juvenile to demonstrate therapeutic progress while concurrently satisfying the community's need for protection and the need for the juvenile to realize the consequences of his actions; and (5) that there should be a mechanism to allow for different periods of institutional confinement where the minimum-maximum term set forth in the Guidelines is not appropriate. Delinquent activity was categorized into six types, ranging from status offenses to the taking of a human life. By utilizing the enumerated considerations together with the type of the most serious offense committed in the last twelve months and the number of same class offenses committed by the juvenile in the last two years, standard minimum and maximum lengths of institutional commitment were determined.

Although minimum-maximum standards were determined, the Guidelines provides for particularized consideration of juveniles on an individual basis. The Guidelines provides: "It can be anticipated that certain students might require a period of institutional treatment longer than that allotted under the guidelines presented . . . while others may not even require the minimum time indicated." If a particular juvenile requires a term different from the standard, a review board will determine whether such a variation is in the best interest of the juvenile and the community and what additional or continued treatment is necessary. Additionally, if it is determined in an individual case that a term longer than the maximum outlined in the Guidelines is required, the review board will reconsider the case at the maximum time under the Guidelines and also at 60-day intervals after that time. This review mechanism is important since, based on the particularized circumstances, it allows a juvenile to be released

1. The Attorney General, on behalf of the Arizona Department of Corrections, filed a "Motion to File Amicus Curiae Brief" with the Clerk of the Superior Court of Maricopa County, accompanied by a memorandum of authorities, which was then made a part of the record on appeal to this court. Appellant did not respond to this motion before the superior court or before this court. The memorandum accompanying the motion sets forth the history and rationale for development of the Length of Programming Guidelines. Copies of the Guidelines were furnished by appellant's counsel and also by the Attorney General.

before the suggested term outlined by the Guidelines or to be retained beyond the maximum term outlined if additional retention is indicated.

■ We conclude that the Length of Programming Guidelines, adopted and implemented by the juvenile division of the Arizona Department of Corrections, provides a flexible rehabilitative approach which is consistent with the indeterminate length of commitment scheme utilized in juvenile court proceedings. The recommended lengths of institutionalization are not mirror images of the adult determinate sentencing scheme because allowance is made for individual treatment plans and variations from the standard terms when necessary. As such, the Length of Programming Guidelines is an appropriate adjunct to a comprehensive rehabilitation program for juveniles.

■ Appellant's second contention is that he is entitled to be credited for what he categorizes as presentence incarceration. He argues that since the Guidelines is based upon the adult criminal code, the criminal code provisions regarding presentence incarceration should also be applicable to juveniles. Although the Length of Programming Guidelines sets forth recommended minimum and maximum terms of institutionalization and therefore resembles provisions of the adult criminal code, the commitment of a juvenile is still for an indeterminate period. The length of a juvenile's commitment is determined by his rehabilitative progress and not necessarily by the length of institutionalization. By reason of this substantive distinction, juveniles are not entitled to credit for time spent in county juvenile facilities prior to being transferred to State Department of Corrections juvenile facilities.

Appellant's third contention is that his admission of the charges as alleged in the petition was not voluntarily or intelligently entered because he was not advised of special sentencing provisions. The special sentencing provisions to which appellant refers are the recommended minimum and maximum terms of institutionalization as set forth in the Length of Programming Guidelines. In essence, appellant is seeking to impose the provisions of Rule 17.2(b), Rules of Criminal Procedure, 17 A.R.S., of the adult criminal system on the juvenile system.

■ Although we have recognized that Rule 17 is not applicable to juvenile proceedings, we have held that when a juvenile gives up constitutional rights by admitting the allegations of a petition, the juvenile court must follow the procedures set down in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *In re Appeal in Maricopa County Juvenile Action No. J–86715*, 122 Ariz. 300, 594 P.2d 554 (App. 1979). We reaffirm this position and specifically hold that Rule 17.2(b) is not applicable to the Length of Programming Guidelines utilized in the juvenile system. This is especially so since we have determined that the Guidelines is distinctive from and does not equate to the sentencing provisions applicable to adult offenders.

■ With respect to the entry of an admission by a juvenile, the requirements in *Boykin* dictate that the record must disclose that the juvenile was aware of his right against self-incrimination, the right to confront accusers, the right to a trial in the form of an adjudication proceeding, and the potential commitment to the Department of Corrections until age 18. In addition to the *Boykin* requirements, we have held, in accordance with *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), that an additional requirement for a valid guilty plea is the existence of a factual basis for the plea. *In re Appeal in Maricopa County Juvenile Action No. J–86715*, *supra*.

■ In the present case, the record shows that appellant was informed of these rights and understood them at the time he entered his admission to the allegations of the petition. Additionally, the record establishes that there was a factual basis for the admission. As to informing appellant of possible commitment, the referee's report

states: "The juvenile is advised of dispositional alternatives, including probation, placement outside the home, or commitment to the State Department of Corrections until the age of 18." It is our opinion that appellant's admission of the charges alleged in the petition was voluntarily and intelligently entered within the prescribed constitutional requirements relating to juvenile offenders.

■ Appellant's final contention is that the juvenile court abused its discretion in committing him to the State Department of Corrections because this was his first adjudication of delinquency. We have specifically held that the disposition of a juvenile who has been adjudicated delinquent is within the sound discretion of the juvenile court and will not be disturbed absent a clear abuse of discretion. *In re Appeal in Maricopa County Juvenile Action No. J–86715, supra; In re Appeal in Maricopa County, Juvenile Action,* 24 Ariz.App. 248, 537 P.2d 976 (1975).

■ Whether there was a clear abuse of discretion must be considered in the context of each case. In the present case and although the juvenile's probation officer recommended commitment to the State Department of Corrections, the juvenile court judge, prior to commitment, ordered a preliminary evaluation to determine if appellant would be accepted by a residential treatment facility. The assistant director of the facility interviewed appellant and concluded that he would not consider appellant for placement. This conclusion was based on appellant's negative attitude toward the program and the belief that appellant was not yet willing to honestly deal with his problems. It was the probation officer's opinion that probation and release to his family was not a viable alternative and that appellant was in need of a structured, secure environment and therefore commitment was recommended. When the foregoing particularizations are considered, along with appellant's violation of release conditions, we do not find an abuse of discretion in ordering the commitment of appellant to the Department of Corrections.

The order of the juvenile court judge committing appellant to the State Department of Corrections until he reaches the age of 18 years unless sooner released pursuant to law is affirmed.

FROEB, P. J., and WREN, J., concur.