674 P.2d 836

In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. J–84984.

No. 17079–PR.

Supreme Court of Arizona, En Banc.

Nov. 9, 1983.

Atmore Baggot, Phoenix, for appellant.

Thomas E. Collins, Maricopa County Atty. by Barbara K. Miller, Deputy County Atty., Phoenix, for appellee.

D. Jesse Smith, Phoenix, for amicus curiae.

HAYS, Justice.

The subject of this review is a juvenile court order transferring an action against respondent from the juvenile court to the superior court for prosecution of respondent as an adult. The Court of Appeals, 138 Ariz. 305, 674 P.2d 859, found that the standard for transfer did not meet minimum due process requirements under the fourteenth amendment. Because respondent had passed his eighteenth birthday, thus negating the juvenile court's jurisdiction, the court of appeals vacated the transfer order. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and Ariz.R.P.Juv. Ct., rule 28. We find that the standard for transfer meets due process requirements. We affirm the trial court's order of transfer. The opinion of the court of appeals is vacated.

The Arizona Constitution, article 6, section 15, places in the superior court exclusive original jurisdiction over all proceedings affecting children under eighteen years who are accused of a crime. This section provides that subject to judicial discretion, criminal proceedings against a youth can be suspended. Finally, it further provides that the power of judges to control children accused of a crime shall be as prescribed by law.

The Arizona Legislature has granted the juvenile court jurisdiction over all juveniles charged with criminal acts. *See* A.R.S. §§ 8–202(A), 8–222. Further, the Arizona Supreme Court has promulgated rules to be followed to transfer an action against a juvenile from the juvenile court to the superior court for prosecution of the juvenile as an adult. *See* Ariz.R.P.Juv.Ct., rules 12, 13, 14.

Rule 14(b) provides the standards by which an action against a juvenile may be transferred from the juvenile court:

> The court may transfer the action for criminal prosecution to the appropriate court having jurisdiction of the offense if the court finds probable cause and reasonable grounds to believe that:
>
> (1) The child is not amenable to treatment or rehabilitation as a delinquent child through available facilities; and
>
> (2) The child is not commitable [sic] to an institution for mentally deficient, mentally defective or mentally ill persons; and
>
> (3) The safety or interest of the public requires that the child be transferred for criminal prosecution.

The phrase "probable cause" refers to the requirement that to transfer a juvenile's case the court first must find probable cause that the juvenile committed the alleged offenses. *See* Ariz.R.P.Juv.Ct., rules 14(a) and 14(b). This phase of the transfer proceeding is similar to a preliminary hearing in the adult court. *In re Anonymous, Juvenile Court No. 6358–4,* 14 Ariz.App. 466, 470, 484 P.2d 235, 239 (1971). The phrase "reasonable grounds to believe" refers to the three findings set forth in rule 14(b) that must be made after the probable cause finding.

Before the court of appeals, the juvenile argued that the reasonable grounds to believe standard of proof did not meet minimum fourteenth amendment due process requirements. The juvenile urged that the "beyond a reasonable doubt" standard must be used when deciding whether to transfer a juvenile's case to the superior court. The court of appeals agreed with the juvenile

that due process requires a greater standard of proof than mandated by rule 14(b). That court did not find, however, that due process requires the beyond a reasonable doubt standard. Rather, the court held that use of the preponderance of the evidence standard would meet due process requirements, and defined preponderance of the evidence as a standard requiring "that the proof be such that the state of mind of a person of reasonable caution be satisfied and convinced of the truth of the matter."

We granted the state's petition for review to clarify the meanings of the various standards of proof and to determine whether the standard set forth in rule 14(b) meets due process requirements.

■ "The most acceptable meaning to be given to the expression, proof by a preponderance, seems to be proof which leads the [trier of fact] to find that the existence of the contested fact is more probable than its nonexistence." McCormick on Evidence, § 339, at 794 (2d ed. 1972). Indeed, this court stated long ago that by a preponderance of the evidence "the ultimate test is, does the evidence convince the trier of fact that one theory of the case is more probable than the other." *Cole v. Town of Miami,* 52 Ariz. 488, 497, 83 P.2d 997, 1001 (1938). The United States Supreme Court on several occasions has agreed with this statement of the preponderance of the evidence test. *See, e.g., Santosky v. Kramer,* 455 U.S. 745, 787, 102 S.Ct. 1388, 1411, 71 L.Ed.2d 599 (1982) (Rehnquist, J., dissenting); *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979); *In re Winship,* 397 U.S. 358, 371, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). Thus, we disagree with the court of appeals' definition of the preponderance of the evidence standard, and hold that that standard requires simply that the trier of fact find the existence of the contested fact to be more probable than not.

■ As stated earlier, a juvenile court judge may transfer a juvenile's case to adult court only if the judge finds probable cause that the juvenile committed the al-

leged offenses, and reasonable grounds to believe the existence of the three requirements enumerated in rule 14(b). In determining the precise meaning of the phrase reasonable grounds to believe, we first note that probable cause requires a reasonably prudent person to find more probably than not the existence of the contested fact. In *Drury v. Burr,* 107 Ariz. 124, 125, 483 P.2d 539, 540 (1971), we said that:

> Where there is more than one inference equally reasonable then probable cause does not exist, but where one inference is more reasonable than another ... then probable cause [of the existence of the disputed fact] may be said to exist.... Reasonable or probable cause exists if the proof is sufficient to cause a person of ordinary caution or prudence conscientiously to entertain a reasonable suspicion [of the existence of the disputed fact].

Similarly, in *Hafenstein v. Burr,* 92 Ariz. 321, 322, 376 P.2d 782, 783 (1962), we stated that "for a magistrate properly to conclude there is 'probable cause' defendant committed the offense for which he is charged, there must be ' * * * more evidence for, (rather) than against', defendant's guilt...." (quoting *Dodd v. Boies,* 88 Ariz. 401, 403–04, 357 P.2d 144, 146 (1960). We further note agreement with the court of appeals that the phrases probable cause and reasonable grounds to believe refer to the same standard of proof. *See, e.g., Slade v. City of Phoenix,* 112 Ariz. 298, 301, 541 P.2d 550, 553 (1975). Thus, the standard of proof set forth in rule 14(b)—reasonable grounds to believe—requires a reasonable person to find that the criteria of rule 14(b) exist more probably than not.

## CONSTITUTIONALITY OF THE RULE 14(b) STANDARD OF PROOF

■ Respondent contends that the Supreme Court's holding in *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), mandates the state to prove beyond a reasonable doubt the three requirements enumerated in rule 14(b), and that a waiver of juvenile jurisdiction without such proof constitutes a denial of due process of law. The issue in *Addington* concerned the standard of proof necessary in a civil proceeding to commit an individual involuntarily to a mental hospital. The court rejected use of the beyond a reasonable doubt standard because:

> There may be factual issues to resolve in a commitment proceeding, but the factual aspects represent only the beginning of the inquiry. Whether the individual is mentally ill and dangerous to either himself or others and is in need of confined therapy turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists. Given the lack of certainty and the fallibility of psychiatric diagnosis, there is a serious question as to whether a state could ever prove beyond a reasonable doubt that an individual is both mentally ill and likely to be dangerous.

*Id.* at 429, 99 S.Ct. at 1811.

The reasoning of the Chief Justice in *Addington* is applicable to the case at bar. There may be factual findings at a transfer hearing, but the decision of whether to transfer a juvenile's case depends on an interpretation of those findings. The juvenile court judge must determine from the findings whether the minor is amenable to treatment, whether he or she is committable to a mental institution, and whether the public safety or interest requires the minor's case to be transferred. Thus, unlike a finding of guilt at a criminal trial, a further step must be made at a transfer hearing. As in *Addington,* it is doubtful whether the state could ever prove the transfer criteria of rule 14(b) beyond a reasonable doubt. Hence, we conclude that due process does not require the juvenile court to find the transfer criteria beyond a reasonable doubt.

Although we have concluded that use of the beyond a reasonable doubt standard of proof is unnecessary to transfer a juvenile's case, the question still remains whether the standard of rule 14(b) meets due process requirements.

It is established that the transfer decision is a critically important decision subject to the dictates of due process. *Kent v. United States,* 383 U.S. 541, 560, 86 S.Ct. 1045,

1057, 16 L.Ed.2d 84 (1966). Thus, a state's chosen standard of proof to transfer a juvenile's case must be measured against the "fundamental fairness" doctrine embodied in the fourteenth amendment due process clause. *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Kent,* 383 U.S. at 553, 86 S.Ct. at 1053.

In the recent case of *Santosky v. Kramer, supra,* the United States Supreme Court outlined the factors to be considered "to determine whether a particular standard of proof in a particular proceeding satisfies due process." *Id.* at 754, 102 S.Ct. at 1395. The three factors, originally set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), are: (1) the private interest affected by the proceeding; (2) the government interest supporting use of the challenged procedure; and (3) the risk of an erroneous deprivation of the private interest created by the state's chosen procedure, and the value, if any, of additional safeguards. *Mathews* also teaches, however, that these factors must be examined in the context of, and in light of, "*all* procedural protections offered by the State." *Santosky,* 455 U.S. at 775, 102 S.Ct. at 1405 (Rehnquist, J., dissenting). Thus, "courts must consider 'the fairness and reliability of the existing ... procedures' before holding that the Constitution requires more." *Id.* (quoting *Mathews,* 424 U.S. at 343, 96 S.Ct. at 907).

The protection afforded a juvenile facing a transfer is extensive. The court must have probable cause that the juvenile committed the alleged offenses, and reasonable grounds to believe that (1) the minor is not amenable to treatment or rehabilitation through available facilities; (2) the minor is not committable to a mental institution; and (3) the safety or interest of the public requires that the minor be transferred for criminal prosecution. Ariz.R.P.Juv.Ct., rule 14(b). Further, the minor is entitled to a pre-transfer hearing, to counsel, and to a statement of reasons by the transferring court listing why the child was transferred. *Kent,* 383 U.S. at 561, 86 S.Ct. at 1057; *see also* rule 14(c). The statement of reasons must be sufficient to permit meaningful review by an appellate court. As stated by the Supreme Court in *Kent:*

> the statement should be sufficient to demonstrate ... that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.

383 U.S. at 561, 86 S.Ct. at 1057. Thus, four specific findings must be made; these findings are made after a hearing at which the minor may be represented by counsel; and the court, if it transfers the juvenile's case, must set forth specific reasons for its decision, reasons sufficiently detailed to permit meaningful review.

Turning from an overview of procedural protections afforded by the state, we now examine the first *Mathews* criterion: the private interest affected by the proceeding. The Supreme Court in *Santosky* recently noted two factors traditionally considered very important in cases where a standard higher than preponderance of the evidence was required: a "significant deprivation of liberty," and "stigma" associated with the decision. 455 U.S. at 756, 102 S.Ct. at 1396; *see Addington,* 441 U.S. at 425, 426, 99 S.Ct. at 1808, 1809.

In *Addington v. Texas, supra,* the Supreme Court held that a clear and convincing standard of proof is necessary to commit an individual involuntarily to a mental hospital. An important reason for that decision was that after the commitment hearing the individual was confined. That simply is not the situation in the case at bar. Rather, the juvenile subject to a transfer hearing is not committed unless he is then charged, tried, and convicted at a criminal trial. Thus, the juvenile is not subject to the exercise of the state's punitive power until after a full trial with a determination by the trier of fact that the accused is guilty beyond a reasonable doubt of the offense with which he is charged. Throughout this process the juvenile is entitled to the full panoply of constitutional protections. In sum, the purpose of the transfer hearing is to determine whether

the child is amenable to treatment or rehabilitation through available facilities, whether the child is committable to a mental institution, and whether the safety or interest of the public requires transfer of the minor; the purpose of the hearing is not to determine whether the minor is guilty of the offense alleged, or whether the minor is to be confined. Those two functions are served at a later hearing at which the highest standard of proof is afforded.

It may be argued that a minor's private interest in a transfer proceeding is compelling because the transfer subjects him to enhanced punishment. But that is not necessarily the case. A minor may be confined until age eighteen; the period of confinement from the adjudication of delinquency until the juvenile's eighteenth birthday might be longer than the criminal sentence for an adult. *See, e.g., In re Appeal, In Maricopa County Juvenile Action No. J–86509,* 124 Ariz. 377, 604 P.2d 641 (1979); *In re Appeal in Maricopa County Juvenile Action No. J–90110,* 127 Ariz. 389, 391, 621 P.2d 298, 300 (App.1980).

The second important factor mentioned in *Santosky* that affects the juvenile's private interest is the "stigma" associated with the proceeding. We do not find that stigma attaches when a juvenile's case is transferred from the juvenile court. Any stigma that might attach to the child is not a result of the transfer proceeding and decision, but rather is a result of any subsequent finding beyond a reasonable doubt that the child committed a crime. *See Breed v. Jones,* 421 U.S. 519, 529, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975).

In holding that due process requires a standard of proof by which "a person of reasonable caution be satisfied and convinced of the truth of the matter," the court of appeals discussed several facts that demonstrate the juvenile's interest in a transfer proceeding. The court of appeals noted that a juvenile found to be delinquent is not confined with adults convicted of crimes, A.R.S. § 8–226; that an adjudication of delinquency is not deemed a criminal

conviction and therefore does not result in consequences of conviction, such as the imposition of civil disabilities and use of the decision in subsequent proceedings, A.R.S. § 8–207; that a record of delinquency may be destroyed in certain circumstances; and that a juvenile is shielded *from publicity*, Ariz.R.P.Juv.Ct., rule 4. Considering these facts along with our discussion of the *Santosky* factors, *supra*, we conclude that the juvenile has a substantial interest in the transfer proceeding.

The next *Mathews* criterion is the government interest supporting use of the challenged procedure. Society has an interest in protection from dangerous juveniles. The state has authority under its police power to protect the community from such individuals. *See Addington,* 441 U.S. at 426, 99 S.Ct. at 1809. If a juvenile is released before being successfully reformed, for example at age eighteen before rehabilitation is complete, then society is subject to the unpredictable actions of a person adjudicated a delinquent yet not rehabilitated. Thus, society, like the juvenile, has a substantial interest in the transfer proceeding.

The final *Mathews* criterion is the risk of an erroneous deprivation of the juvenile's interest created by the state's chosen procedure. As discussed earlier, the procedural protection afforded a juvenile facing a transfer hearing is extensive. The transferring judge must make four specific findings, rule 14(b); each finding may be made only after a hearing at which the minor may be represented by counsel; and the court, if it transfers the juvenile's case, must set forth specific reasons for its decision, reasons sufficiently detailed to permit meaningful review by an appellate court. We find, after examining *all* the procedural protections afforded by the state, *see Santosky,* 455 U.S. at 775, 102 S.Ct. at 1405 (Rehnquist, J., dissenting), that the risk of an erroneous deprivation of the juvenile's interest is slight, and that little, if any, meaningful procedural protection would be added by requiring a higher standard of proof in rule 14(b).

We find that the juvenile and the state have substantial interests in a transfer pro-

ceeding. Further, we find that little would be gained by increasing the rule 14(b) standard of proof. Under the *Mathew's* criteria, therefore, we hold that "fundamental fairness" embodied in the fourteenth amendment due process clause is satisfied by the current standard of proof required in rule 14(b).

Our decision is buttressed by the Supreme Court opinion in *Kent v. United States, supra.* Although the Supreme Court has never explicitly decided upon a standard of proof necessary to satisfy due process, *Breed,* 421 U.S. at 537, 95 S.Ct. at 1790, the Court in *Kent* seemed to approve a probable cause standard. In *Kent* the Court held that due process requires a transferring court to hold a pre-transfer hearing, to permit representation by counsel, and to state the reasons for the transfer. The statute in *Kent* allowed the juvenile court judge to waive jurisdiction of a juvenile's case simply "after full investigation." Furthermore, the appendix to *Kent* set forth criteria to guide the decision whether to exercise discretion to decline jurisdiction. The appendix states:

> An offense ... will be waived [to adult criminal court] if it has *prosecutive merit* and if it is heinous or of an aggravated character, or—even though less serious— if it represents a pattern of repeated offenses which *indicate* that the juvenile may be beyond rehabilitation under Juvenile Court procedures, or if the public needs the protection afforded by such action.

383 U.S. at 566, 86 S.Ct. at 1059-60. (Emphasis added.)

"Prosecutive merit" to us means nothing more than probable cause, and "indicative" means an even lesser standard of proof. Thus, it appears that the United States Supreme Court has implicitly sanctioned the probable cause standard of proof to transfer.

Ordered transfer order of the trial court is reinstated and the cause remanded to adult court for further proceedings.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.