4 P.3d 1034

**In re MELISSA K.**

No. 1 CA–JV 99–0155.

Court of Appeals of Arizona, Division 1, Department A.

April 13, 2000.

Review Denied Sept. 26, 2000.

Richard Romley, Maricopa County Attorney By Rene Williams, Deputy County Attorney, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender By Suzanne W. Sanchez, Deputy Public Defender, Mesa, for Appellant.

## OPINION

SULT, Judge.

¶ 1 The juvenile appeals from her admission to a probation violation and the resulting disposition of the juvenile court. Finding that the juvenile court, Commissioner *Pro Tempore* Arrow, erred in failing to advise the juvenile of her constitutional rights and all of the relevant consequences of her admission, and that the court, Commissioner Yancey, abused its discretion in committing the juvenile to the Arizona Department of Juvenile Corrections, we reverse and remand for further proceedings.

## BACKGROUND

¶ 2 The juvenile's involvement with the juvenile court began after she ran away from home three times in October 1998. In March 1999, she was adjudicated incorrigible when she admitted to one of the runaway allegations. On April 7, 1999, the court placed the juvenile on probation in the protective custody of the Arizona Department of Economic Security, ordering that she obtain individual and sex abuse counseling and drug and alcohol treatment.

¶ 3 The juvenile ran away from her ADES placement two days later, which was the basis for another petition in April alleging violation of probation. The juvenile was later accused of misdemeanor shoplifting and was adjudicated delinquent for this offense in May after admitting to the allegation in exchange for dismissal of the April petition. The juvenile was again placed on probation and awarded to the Vision Quest High Impact Program to obtain the needed counseling and treatment. On July 10, 1999, the juvenile ran away from Vision Quest and fled

to California. She was apprehended when she returned to Arizona to see her mother.

¶ 4 Another petition to revoke probation was filed, and the juvenile admitted to violating her probation by running away from the Vision Quest program. The court accepted the juvenile's admission but completely failed to advise her of the rights she was giving up by making the admission. In addition, while the court did advise her she could be committed to the Arizona Department of Juvenile Corrections ("ADJC"), it failed to tell her such commitment could continue until she turned eighteen.

¶ 5 Prior to disposition, the juvenile's probation officer prepared a report noting that the psychological evaluation of the juvenile recommended she be placed in a "locked-type placement" due to her frequent runaway history. However, the probation officer also noted that the juvenile scored only a "1" on the ADJC Risk Assessment, which the officer conceded did not support commitment to ADJC. Nevertheless, the officer recommended commitment to ADJC, which the officer described as "a viable treatment alternative."

¶ 6 The juvenile court committed the juvenile to the custody of ADJC to serve a minimum of one year in secured confinement based on the following findings:

> THE COURT FINDS that it is appropriate to deviate from the guidelines for commitment to the Arizona Department of Juvenile Corrections in this case. The juvenile does not have any felony convictions. Most recently, the juvenile was placed at Vison Quest and ran away on 07-10-99 after stealing a car belonging to Vision Quest, in order to make her escape. The juvenile has a long and serious history of substance abuse, in part due to abuse that she suffered as a young child and as a teenager. The juvenile has run away from her parent's home numerous times and she does not appear to take probation seriously. She continues to engage in a pattern of delinquency and demonstrates that she cannot comply with the terms set forth by the Court or be safely supervised in the community.

The court further justified its disposition by indicating that the juvenile needed to be committed for at least a year in order to qualify for either a state or federal substance abuse program administered by ADJC. The juvenile timely appealed.

## ISSUES

1. Did the juvenile court err in failing to advise the juvenile of her constitutional rights and the fact that she might be awarded to the custody of ADJC until age eighteen before accepting her admission to a probation violation?
2. Did the juvenile court abuse its discretion in awarding the juvenile to the custody of ADJC?

## ANALYSIS

*1. Admission of Probation Violation*

■ ¶ 7 Rule 10.4(b) of the Rules of Procedure for the Juvenile Court requires the court to personally address a juvenile who is admitting to a probation violation to confirm that the juvenile understands the nature of the admission, her constitutional rights, and that she may still be separately adjudicated for the violation to which she is admitting if it constitutes a new criminal offense. This requirement is designed to ensure that the juvenile's admission is voluntarily and intelligently entered into. *See* Ariz. R.P. Juv. Ct. 10.4(b)(5). The record on appeal must affirmatively establish that the juvenile was aware of these rights and the potential consequences of the admission at the time it was entered into. *See Maricopa County Juvenile Action No. J–90110*, 127 Ariz. 389, 393, 621 P.2d 298, 302 (1980); *Maricopa County Juvenile Action No. J–86715*, 122 Ariz. 300, 303, 594 P.2d 554, 557 (1979).

■ ¶ 8 The specific matters of which a juvenile must be advised include the right to a violation hearing, the right to remain silent, the right to confront accusers, and the potential of commitment to ADJC until age eighteen. *Juvenile Action No. J–90110*, 127 Ariz. at 393, 621 P.2d at 302. Where the record does not reflect the juvenile's knowledge of these facts, a remand is necessary to permit the juvenile court to determine whether the juvenile was aware of these facts notwithstanding the failure of the juvenile court to comply with Rule 10.4(b). *Juvenile Action No. J–86715*, 122 Ariz. at 303, 594

P.2d at 557. Depending on the court's findings, the previous acceptance of the admission can be affirmed or the admission must be withdrawn and proceedings begun anew.

■ ¶ 9 Appellee argues that the record does reflect the juvenile's knowledge of her rights, citing the affidavit of indigency she signed before the advisory hearing. This affidavit lists her constitutional rights and has an acknowledgment that the juvenile understands them. Appellee also argues that the juvenile was aware she could be committed to the ADJC until age eighteen because a document that she signed in May 1999, containing the terms of her probation, informed her of this potential consequence.

¶ 10 Appellee relies on *In re Eric L.,* 189 Ariz. 482, 943 P.2d 842 (1997), to argue that if the juvenile court erred, it was harmless error because the extended record demonstrates the juvenile's knowledge of the subject matter of the omitted advice. We acknowledge that *In Re Eric L.,* relying on cases involving erroneous acceptance of guilty pleas from adult offenders, held that this court can affirm the juvenile court's flawed acceptance of an admission so long as there is some documentation in the record that the juvenile understood his rights and the consequences of his admission. 189 Ariz. at 485, 943 P.2d at 845. We also note that *In Re Eric L.* is not a unanimous decision and that there is some sentiment for not applying adult offender principles of law in the juvenile context, presumably based on the quite reasonable belief that a juvenile is significantly less likely to understand the complicated legal concepts that he reads in a document than is a similarly situated adult. *See id.* at 487, 943 P.2d at 847 (Kleinschmidt, J., dissenting). We are not compelled to elect a position here, however, because we consider *In Re Eric L.* to be so different from our case as not to be controlling.

¶ 11 *In Re Eric. L.,* the juvenile court failed to inform the juvenile of only one constitutional right, the right to confront wit-

nesses. *Id.* at 484–85, 943 P.2d at 844–45. Here, the omission of rights was complete, and the quite significant (especially to a sixteen-year old) consequence of imprisonment until age eighteen was also left uncommunicated. In our opinion, this failure is simply too enormous to be compensated for by the juvenile's signature on documents that had only a remote connection to the probation violation hearing and the constitutional rights associated therewith. We therefore vacate the juvenile court's acceptance of the juvenile's admission and remand to the juvenile court to determine whether the juvenile was aware of her right to a hearing, her right to remain silent, her right to confront witnesses, and that she could be committed to ADJC until age eighteen. *See Juvenile Action No. J–86715,* 122 Ariz. at 303, 594 P.2d at 557.

### 2. Disposition

■ ¶ 12 The second question raised is whether the juvenile court's commitment of this juvenile to ADJC was error. It is obvious from the record that the juvenile court was concerned, and properly so, with the juvenile's self-destructive behavior, including substance abuse and sexual promiscuity, and was likewise concerned that the juvenile had been unable to commit to a treatment program to resolve these problems. The court correctly determined that if the juvenile was to have any hope of avoiding serious and lifelong consequences from her behavior, she was going to have to be placed in a facility from which she could not abscond. We conclude, however, that on this record, the court abused its discretion in choosing an ADJC commitment as the means to treat this juvenile in a secure setting. *See In Re John G.,* 191 Ariz. 205, 207, ¶ 8, 953 P.2d 1258, 1260, ¶ 8(1998) ("We will not disturb a juvenile court's disposition order absent an abuse of discretion.").[1]

¶ 13 The facilities operated by the Department of Juvenile Corrections are not primarily drug treatment centers. Rather,

1. Appellee appended to its opening brief a letter from ADJC regarding the juvenile. The letter obviously relates to events occurring during the juvenile's stay at ADJC and is subsequent to the disposition of the juvenile court. This court may only consider evidence contained in the record before the lower court to decide whether that court erred in its findings or otherwise abused its discretion. *See State v. Schackart,* 190 Ariz. 238, 247, 947 P.2d 315, 324 (1997); *Martin v. State,* 22 Ariz. 327, 328, 197 P. 578, 579 (1921). This letter was not before the juvenile court when it made its disposition and is therefore wholly irrelevant to this appeal. We grant appellant's mo-

such facilities are "for the custody, treatment, rehabilitation and education of youth who pose a threat to public safety, who have engaged in a pattern of conduct characterized by persistent and delinquent offenses that, as demonstrated through the use of other alternatives, cannot be controlled in a less secure setting. . . ." Arizona Revised Statutes Annotated ("A.R.S.") § 41–2816(A) (1999). This is in essence the mission statement for the Department of Juvenile Corrections and describes the population toward which its efforts are to be aimed.

¶ 14 To ensure that this population is properly identified, guidelines for commitment of juvenile offenders to ADJC have been established. A juvenile court is not required to follow the guidelines, but it must consider them in making disposition. A.R.S. § 8–246(C) (1999); *see also Pinal County Juvenile Delinquency Action No. JV-9404492,* 186 Ariz. 236, 238, 921 P.2d 36, 38 (1996). Number VI of the Guidelines for Commitment to ADJC states:

> Juveniles who commit only incorrigible offenses, non-repetitive misdemeanor offenders, and juveniles committing only technical probation violations while on probation for something other than a violent, serious, repetitive or serious drug offense should not be considered for commitment. A nuisance offender also includes the juvenile who refuses to follow anyone's rules or structure, yet does not commit offenses that would make him or her eligible for commitment under the criteria set forth in Guidelines I–IV.[2]

¶ 15 It is clear that under this guideline, the juvenile here is classified as a nuisance offender, presumptively inappropriate for commitment to ADJC[3]. Nevertheless, the juvenile court deviated from this guideline and committed the juvenile. The court had the authority to do so but such a significant deviation must be based on the strongest of reasons. Housing a nuisance offender with hardcore delinquents, and possibly preempting a hardcore delinquent from precious space in an ADJC rehabilitative program, can be justified only upon a finding that no other alternative is available to the juvenile court. Simply defining ADJC as a "viable treatment alternative" misconstrues the function of that agency and transforms it into a routine disposition alternative for juveniles who are difficult but are still only status offenders.

¶ 16 Conspicuously absent from the record in this case is any evidence that the juvenile court explored all alternatives. For example, there is no evidence that the court attempted but failed to find a non-correctional secure drug and behavioral treatment program to which it could commit the juvenile. Without such evidence, we cannot find that the ADJC commitment of this juvenile was within the discretion of the juvenile court.

### CONCLUSION

¶ 17 We vacate the disposition order in this case. We remand this case to the juvenile court to determine whether the juvenile was aware of the rights she was waiving at the time she entered the admission and whether she was aware of all relevant consequences. If the juvenile court finds that the juvenile was aware of her rights and the consequences of the admission at the time it was made, then the juvenile court shall hold a new hearing to determine an appropriate disposition. If the juvenile was not properly informed, the court shall reinstate all charges pending at the time the admission was made and conduct such further proceedings as are appropriate.

CONCURRING: REBECCA WHITE BERCH, Presiding Judge, and JAMES M. ACKERMAN, Judge.

---

tion to strike the letter and any references to its contents in appellee's brief.

**2.** Guidelines I–IV deal with serious offenders, violent offenders, repetitive offenders, and serious drug offenders.

**3.** In making its disposition, the court stated that the juvenile stole a car from the treatment center. However, the juvenile was never charged with or adjudicated on this allegation. Moreover, a search of the record does not disclose any evidence whatsoever relating to this allegation, including any statement by the juvenile admitting or denying it.