NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE PRISCILLA S.

No. 1 CA-JV 14-0067
FILED 07-31-2014

---

Appeal from the Superior Court in Yavapai County
No. P1300JV201300274
The Honorable Anna C. Young

**AFFIRMED**

---

COUNSEL

Yavapai County Attorney's Office, Prescott
By Mike A. Daniels
*Counsel for Appellee*

Law Office of Florence M. Bruemmer, P.C.
By Florence M. Bruemmer
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which
Presiding Judge Patricia K. Norris and Judge Kent E. Cattani joined.

---

**W I N T H R O P,** Judge:

¶1        Priscilla S. ("Juvenile") appeals the juvenile court's disposition order approving placement with Juvenile's sister in Oklahoma for the duration of her probation.  Juvenile contends the juvenile court abused its discretion by (1) placing her with a family member other than her father ("Father") and (2) making an inappropriate custody determination in violation of Father's parental rights.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In February 2014, Juvenile was arrested on one count of theft, a class one misdemeanor, in violation of Arizona Revised Statute ("A.R.S.") Section 13-802 (2013)[1] for leaving a restaurant without paying for her food.  At the time, Juvenile was on probation for two prior offenses.  After being held in detention for several days, Juvenile was released to her sister in Chandler.

¶3        At a March 2014 disposition hearing, the juvenile court adjudicated Juvenile delinquent.  Juvenile's probation officer advocated placing Juvenile with her other sister, who lives on a military base in Oklahoma, characterizing the home in Oklahoma as "the best placement at this point."  Juvenile objected to the proposed move, explaining she would prefer to live with Father.  Father also objected to the move, as he "want[ed] to have her home."

¶4        Although Juvenile's probation officer reported Juvenile was "doing well" in Chandler, the situation financially strained her sister.  Juvenile's mother ("Mother") agreed with the probation officer's assessment.  Mother and Father were separated, and by Mother's own admission, she and her husband "weren't very good parents."  Juvenile's sister in Chandler also expressed support for the move, as did Juvenile's guardian ad litem.

¶5        Further, as indicated in the disposition report considered by the juvenile court, the Deputy County Attorney reported Father smelled of alcohol at Juvenile's advisory hearing in February 2014.  In response, the juvenile court ordered a Child Protective Services ("CPS")[2] investigation,

---

[1]      We cite the current versions of the relevant statutes, unless otherwise noted, because no revisions material to this decision have since occurred.

[2]      Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety has taken over the CPS

during which Father "admitted to [CPS] that his urine would possibly be positive for THC." The CPS investigation was ongoing as of Juvenile's disposition hearing.

**¶6** Juvenile was also living with Father at the time of her previous violations. While under Father's care, she failed to appear at a scheduled court hearing and missed school frequently.

**¶7** After reviewing the disposition addendum report and hearing testimony, the juvenile court approved placing Juvenile with her sister in Oklahoma for the duration of her probation. Pending the move, the juvenile court placed Juvenile with her sister in Chandler. The juvenile court explained: "I don't believe either of [Juvenile's] parents is in a position to actually take care of [Juvenile] and give [her] what [she] need[s]." The judge expressed hope that in Oklahoma, Juvenile would get a "good fresh start" where she would be "able to achieve [her] potential."

**¶8** Juvenile filed a timely notice of appeal. We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, A.R.S. § 8-235(A), and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## DISCUSSION

**¶9** Juvenile contends the juvenile court abused its discretion by (1) placing her with a family member other than Father and (2) making a "custody" determination violating Father's parental and due process rights.

**¶10** The objective of a proceeding involving a delinquent juvenile is rehabilitation of the child. *Ariz. State Dep't of Pub. Welfare v. Barlow*, 80 Ariz. 249, 252, 296 P.2d 298, 300 (1956) (citation omitted). Once a child has been adjudicated delinquent, the juvenile court has broad power to make a proper disposition. *Maricopa Cnty. Juv. Action No. J-72918-S*, 111 Ariz. 135, 137, 524 P.2d 1310, 1312 (1974). Under A.R.S. § 8-341(A)(1), a juvenile court may "award a juvenile delinquent, subject to the supervision of a probation department . . . [t]o a reputable citizen of good moral character [or] . . . [t]o maternal or paternal relatives." A.R.S. § 8-341(A)(1)(c), (f).

---

investigation in this matter. *See* ARCAP 27. For ease of reference and consistency with the record, however, we refer to CPS in the text of this decision.

¶11        We will not disturb the juvenile court's disposition absent a clear abuse of discretion. *Maricopa Cnty Juv. Action No. JV-110720*, 156 Ariz. 430, 431, 752 P.2d 519, 520 (App. 1988).

### I. Placement with a Family Member Other than Father

¶12        Juvenile asserts that the juvenile court should have placed her with Father based on her preference, her lack of ties to Oklahoma, and Father's willingness to have her live with him.[3]

¶13        Under A.R.S. § 8-341(A)(1)(f), in considering how best to serve the goal of rehabilitating a delinquent child, the juvenile court is explicitly authorized to award Juvenile to a maternal or paternal family member, including her sister in Oklahoma and her sister in Chandler in the interim. The juvenile court considered testimony from Mother, Father, Juvenile's probation officer, and the guardian ad litem. Mother and the guardian ad litem's testimony, as detailed above, favored Juvenile's placement in Oklahoma over placement with Father. Mother, Juvenile's probation officer, and Juvenile's sister in Chandler also testified that Juvenile's sister in Oklahoma is responsible and able to provide Juvenile with a stable home environment. Furthermore, the record reflects Juvenile has been living with her sister in Chandler since February as a result of the CPS investigation of Father. Juvenile does not dispute the accuracy of these facts. Juvenile also acknowledges the juvenile court was "concerned, and properly so, with . . . the fact that the [J]uvenile did not do [so] well at Father's home [after her] . . . first offense."

¶14        Citing *In re Melissa K.*, 197 Ariz. 491, 4 P.3d 1034 (App. 2000), Juvenile further contends the court abused its discretion by placing Juvenile with her sister in Oklahoma because "a less restrictive placement" — i.e. placement with Father — was available, making placement in Oklahoma an inappropriate means of "treating" Juvenile. Juvenile's reliance on *Melissa K.* is misplaced. In *Melissa K.*, the issue was whether the juvenile court had abused its discretion in awarding a juvenile offender to the custody of Arizona Department of Juvenile Corrections ("ADJC") without first examining "less secure" options and determining that no such option was viable. In that case, the appellate court determined the juvenile court deviated substantially from ADJC commitment guidelines under A.R.S. § 41-2816. *Id.* "Less secure" in that case, however, solely referred to the

---

[3]        Juvenile does not challenge the status of either sister as a "reputable citizen of good moral character" or a "maternal or paternal relative." A.R.S. § 8-341(A)(1)(c), (f).

consideration of alternatives to ADJC commitment, *Melissa K.* 197 Ariz. at 495 ¶ 13, 4 P.3d at 1038, not a "less restrictive placement" along the lines of a custody determination. In the instant case, Juvenile has not been committed to ADJC, nor has that possibility ever arisen. On this record, we find no abuse of judicial discretion. *See J-110720*, 156 Ariz. at 431, 752 P.2d at 520.

### II. "Custody" Determination

**¶15** Juvenile also contends that the juvenile court made an improper "custody" determination.[4] Specifically, Juvenile argues that the juvenile court erred in failing to find "grave reasons" why Juvenile should not live with Father, given his willingness to have her at home. The right of parents to the custody of a minor child is both a natural and a legal right. *Anguis v. Superior Court,* 6 Ariz. App. 68, 429 P.2d 702 (1967) (citation omitted). A court should not transfer a child from her natural parents except for "the gravest reasons." *Id.* at 74, 429 P.2d at 708 (citation omitted). Once a child has been adjudicated delinquent, however, the juvenile court has broad power to make a proper disposition. *See J-72918-S*, 111 Ariz. at 137, 524 P.2d at 1312. This broad power includes the discretion to place Juvenile with adults other than her biological parents, pursuant to A.R.S. § 8-341(A)(1)(c), (f). We find no abuse of discretion.

## CONCLUSION

**¶16** We affirm the juvenile court's disposition order directing that Juvenile be placed with her sister in Oklahoma and placing Juvenile with her sister in Chandler in the interim.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh

---

[4] We note Juvenile appears to argue in favor of Father's legal right to custody. This argument is predicated on the assertion of Father's legal right; however Father is not an aggrieved party in this case. *See* A.R.S. § 8-235(A) (providing that any "aggrieved party" may appeal from a final order of the juvenile court), *Matter of Pima Cnty. Delinquency Action No. 90101-1,* 154 Ariz. 493, 494, 744 P.2d 20, 21 (App. 1987) (holding the parents of a minor child are not "aggrieved parties" to a delinquency proceeding). Therefore, we will not consider these arguments as they relate to an assertion of Father's rights.