923 P.2d 880

**In the Matter of The APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. JV–512016.**

**No. 1 CA–JV 96–0036.**

Court of Appeals of Arizona,
Division 1, Department D.

Sept. 17, 1996.

Richard M. Romley, Maricopa County Attorney by David King Udall, Deputy County Attorney, Mesa, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Suzanne Heiler, Deputy Public Defender, Mesa, for Appellant.

## OPINION

FIDEL, Presiding Judge.

In this opinion, we hold that the juvenile court neither violated the ex post facto clauses of the federal or state constitutions nor abused its statutory discretion when it committed a juvenile to a locked facility of the Arizona Department of Juvenile Corrections ("ADJC") for a term that exceeded the term recommended in the ADJC Guidelines and Classification Matrix.

## I. BACKGROUND

On August 9, 1995, the State filed a delinquency petition alleging that the juvenile committed child molestation. Pursuant to a plea agreement, the juvenile admitted that he had attempted to molest his younger sister. As a term of probation, the juvenile was required to reside at a residential treatment center. Shortly thereafter, the juvenile was charged with violating the terms of probation by running away from the treatment center (Count I) and failing to attend school (Count II). Pursuant to a second plea agreement, the juvenile admitted to Count II, and the State dismissed Count I.

If the juvenile court had disposed of the juvenile's offense by application of the ADJC Guidelines and Classification Matrix, the court would have selected a term of nine to twelve months in secure care. The juvenile probation officer, however, recommended a term of eighteen to twenty-four months as more appropriate to the juvenile's case; and the juvenile court ordered the juvenile, then sixteen years and one week old, to serve "24 months or until his 18th birthday, in a locked facility, secured by the Arizona Department of Juvenile Corrections."

On appeal, the juvenile asserts three errors: (1) that by exercising prescriptive power over the juvenile's minimum length of stay, the juvenile court unlawfully gave retroactive application to section 8–241(I) of the Arizona Revised Statutes Annotated ("A.R.S."); (2) that the court abused its dis-

cretion by committing the juvenile for a longer period of secure care than provided for by the ADJC Classification Matrix; and (3) that the court improperly based its disposition upon facts outside the factual basis for the plea agreement.

## II. RETROACTIVE APPLICATION OF A.R.S. § 8–241(I)

We first consider whether, in exercising prescriptive power over the term of the juvenile's commitment, the juvenile court gave unlawful retroactive application to A.R.S. § 8–241(I) (Supp.1995). The Arizona and United States Constitutions prohibit the enactment or application of ex post facto laws. *See* U.S. Const. art. I, § 9; Ariz. Const. art. II, § 25. Section 1–246 (1995) codifies this proscription in matters of criminal punishment:

[W]hen the penalty for an offense is prescribed by one law and altered by a subsequent law, the penalty of such second law shall not be inflicted for a breach of the law committed before the second took effect, but the offender shall be punished under the law in force when the offense was committed.

The statute at issue in this case, A.R.S. § 8–241(I), provides:

From and after September 30, 1995, after considering the length of stay guidelines developed pursuant to § 41–2816, subsection C, the court may set forth in the order of commitment the minimum period during which the child shall remain in secure care while in the custody of the department of juvenile corrections.... From and after September 30, 1995[,] ... the department shall not release a child from secure care before the child completes the length of stay determined by the court in the commitment order unless the committing court orders otherwise.

This statute allows, but does not require, the juvenile court to impose a minimum period in a locked facility, and the final clause allows the juvenile court to review and amend the commitment order.

The juvenile committed his delinquent act in December 1994. Subsection 8–241(I) did not take effect until September 30, 1995. The juvenile court committed the juvenile to ADJC at a dispositional hearing on January 4, 1996. The juvenile contends that the juvenile court was precluded under the statute and under the ex post facto clauses of the federal and state constitutions from imposing a minimum period of commitment for a delinquent act that preceded the statute's effective date.

■ We first determine that, in exercising the dispositional powers of A.R.S. § 8–241, the juvenile court did not violate that statute's effective date. We interpret the statute as extending the juvenile court's prescriptive power over the term of confinement in dispositions after September 30, 1995. As this disposition took place in January 1996, the court was statutorily entitled to draw upon section 8–241. The question remains, however, whether the court unconstitutionally applied the statute by applying it to an offense that took place before its effective date.

The State argues that we should not focus our ex post facto analysis upon the date of the juvenile's delinquent conduct, but rather upon the date of the conduct for which his probation was revoked. Although the juvenile's delinquent conduct occurred before September 30, 1995, his probation was revoked in response to conduct between October 12 and 17 of 1995. Accordingly, the State contends, because the juvenile court was responding at the time of disposition to the juvenile's probation-violative acts, the court did not engage in a retroactive application of A.R.S. § 8–241.

■ We disagree. "When a trial court revokes probation, it 'must impose a sentence because of the original offense; the sentencing court is without authority to impose punishment for violation of probation alone.'" *State v. Baum*, 182 Ariz. 138, 140, 893 P.2d 1301, 1303 (App.1995) (quoting *State v. Rowe*, 116 Ariz. 283, 284, 569 P.2d 225, 226 (1977)). The juvenile court disposed of the juvenile's probation violation by revoking his probation; it then disposed of his original delinquent conduct by committing him to ADJC. And because the juvenile was committed to ADJC for a breach of the law that occurred before

the enactment of A.R.S. § 8–241, that statute was retroactively applied.

 It does not necessarily follow, however, that the statute was unconstitutionally retroactively applied. Not every retroactive application of a sentencing or dispositional statute is unlawful. Retroactive application of a sentencing or dispositional statute violates the ex post facto clauses of the state and federal constitutions only if it "inflicts a greater punishment than the law annexed to the crime, when committed." *State v. Noble,* 171 Ariz. 171, 174, 829 P.2d 1217, 1220 (1992) (quoting *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)). When, in contrast, the statute merely regulates the imposition of sentence without increasing the level of punishment, the trial court may constitutionally apply a statute effective at the time of disposition, though not yet effective at the time of the offense. *Noble,* 171 Ariz. at 174, 829 P.2d at 1220.

 Division Two of this court recently addressed the retroactive application of A.R.S. § 8–241 in *In re Cochise County Juvenile Action No. JV 95000239.* There, the court held that "[A.R.S. § 8–241] did not authorize 'a greater punishment' than permitted at the time the minor committed the offense. It merely shifted to the court the authority to impose a minimum period of secure care." *In re Cochise County Juvenile Action No. JV 95000239,* 186 Ariz. 234, 236, 921 P.2d 34, 36 (App. 1996). We agree.

Before A.R.S. § 8–241(I) allowed the juvenile court to order a minimum term of confinement for a juvenile, A.R.S. § 41–2816(C) (1992) governed the length of a juvenile's stay in a locked facility. Before the 1994 revisions, A.R.S. § 41–2816(C) (1992) provided:

> The department shall develop length of stay guidelines that are consistent with public safety considerations. Each youth who is placed in a secure care facility shall be assigned a length of stay pursuant to the length of stay guidelines. The length of stay shall set forth minimum and maximum review dates.

In 1994, the section was revised to require ADJC and the juvenile court to cooperatively

"develop length of stay guidelines that are consistent with both treatment and public safety considerations." *See* A.R.S. § 41–2816(C) (Supp.1995).

Before September 30, 1995, the juvenile court lacked authority to determine the length of confinement of a juvenile who the court had committed to ADJC; ADJC had exclusive discretion to establish a committed juvenile's length of stay. *See* A.R.S. § 41–2816(C) (1992). With the enactment of A.R.S. § 8–241(I), the juvenile court gained the option to transfer length-of-stay discretion from ADJC to itself. The statute, therefore, clearly *regulated* the imposition of the juvenile's punishment by reallocating discretion over length of stay. It did not, however, subject a juvenile to greater punishment— i.e., a greater length of stay—than the juvenile faced before the statute was passed. To the contrary, both before and after passage of A.R.S. § 8–241(I), a juvenile faced the possibility of confinement at an ADJC facility until age eighteen. *Compare* A.R.S. § 8–246 (1989) *with* A.R.S. § 8–246 (Supp.1995). As the new statute merely altered the decision-maker, not the length of stay, we join Division Two in finding it regulatory, not punitive, in nature.

The juvenile argues, however, that a punitive change is demonstrated by the juvenile court's decision to impose a period of confinement that exceeded the nine to twelve-month guideline term. Before September 30, 1995, the juvenile argues, ADJC could not have exceeded a guideline term. We disagree. Under A.R.S. § 41–2816(C) (1992), ADJC was obliged, when imposing a length of stay pursuant to guidelines, to "set forth minimum and maximum *review* dates." *Id.* (emphasis added). Nothing in that statute precluded the ADJC at a scheduled review, from extending confinement to age eighteen. *See* A.R.S. § 8–246 (1989).

In summary, we conclude that A.R.S. § 8–241(I) regulates, without increasing, "the penalty for an offense." As A.R.S. § 8–241(I) had taken effect by the time of disposition in this case, the juvenile court was both statutorily and constitutionally entitled to draw upon that statute's dispositional powers.

## III. EXCEEDING THE GUIDELINES

The juvenile next argues that the court abused its discretion when it ordered a length of stay that exceeded the period set forth in ADJC guidelines.

■ We review juvenile court dispositions for abuse of discretion. *In re Maricopa County Juvenile Action No. JV–510312*, 183 Ariz. 116, 118, 901 P.2d 464, 466 (App. 1995). Although the juvenile argues that the juvenile court should "follow the guidelines absent extraordinary circumstances," he cites no authority to support a heightened standard. The guidelines do not create a different standard. "[T]hese guidelines are just that: guidelines; they are not mandatory and do not place constraints on the juvenile court's discretion to determine the appropriate length of stay." *In re Pinal County Juvenile Action No. JV–9404492*, 186 Ariz. 236, 238, 921 P.2d 36, 38 (App.1996). The juvenile court stated on the record its reasons for departing from the guidelines; after reviewing the record, we find no abuse of discretion.

## IV. INFORMATION CONSIDERED AT SENTENCING

The juvenile next claims that the court erred in considering, for dispositional purposes, two allegations of fact "that were neither part of the factual basis for the plea agreement nor otherwise reliable." First, the juvenile argues that the court improperly considered a hearsay recounting in the probation report of the victim's allegation to the police that the juvenile had molested or attempted to molest her on several occasions and had threatened to kill her and her parents if she told what he had done. Second, the juvenile argues that the court improperly considered a letter from Dr. Lewis, the associate clinical director of a residential treatment facility, relating details of an interview with the juvenile. During that interview, the juvenile admitted sexually abusing his sister over a five-year period, beginning when she

was five years old. At the disposition hearing, the juvenile court referred to these documents as supplying "the real facts of what occurred." In explaining its disposition, the court stated, "This was assaultive behavior. It's been going on for a number of years."

■ "[A]t disposition following adjudication of delinquency on one charge, the court may consider reliable evidence of behavior for which there has been no adjudication." *In re JV–510312*, 183 Ariz. at 119, 901 P.2d at 467. "Whether hearsay information is 'reliable' is largely a matter of discretion with the trial court...." *State v. Marquez*, 127 Ariz. 3, 6, 617 P.2d 787, 790 (App.1980) (citing *State v. Donahoe*, 118 Ariz. 37, 574 P.2d 830 (App.1977)). In *Marquez*, we specifically upheld the discretion of a sentencing court to consider "information in presentence reports taken from police records...." *Id.* As for the letter from Dr. Lewis, by establishing a hearsay exception for "[s]tatements made for purposes of medical diagnosis or treatment," we have recognized the reliability of such statements. *See* Ariz.R.Evid. 803(4), 17A A.R.S. Although the juvenile challenges the probation report and Lewis letter as unreliable sources, he does not contend that the facts reported in either document were false or misleading. We conclude that the juvenile court did not abuse its discretion in accepting both documents as reliable sources of dispositional fact.

## V. CONCLUSION

For the foregoing reasons, finding neither error nor abuse of discretion, we affirm the order of the juvenile court.

GARBARINO and GRANT, JJ., concur.