55 P.3d 81

**In re NIKY R.**

**No. 1 CA–JV 01–0192.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 12, 2002.

As Amended Oct. 3, 2002.

349. We therefore do not address the former provision separately.

388

Janet Napolitano, Attorney General, by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Richard M. Romley, Maricopa County Attorney, by Linda Van Brakel, Deputy County Attorney, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender, by Theresa M. Armendarez, Deputy Public Defender, Mesa, Attorneys for Appellant.

## OPINION

BARKER, Judge.

¶ 1 Niky R. (appellant) appeals from the juvenile court's disposition order committing him to the Arizona Department of Juvenile Corrections (ADJC) for a six month minimum length of stay. Appellant contends that the juvenile court abused its discretion by failing to explore all alternatives to commitment and that there was insufficient evidence that appellant posed a significant risk to the community justifying commitment to ADJC.

¶ 2 This case is of public importance as we, for the first time, construe the recently adopted Commitment Guidelines to the Arizona Department of Juvenile Corrections. For the reasons that follow, we affirm the juvenile court's adjudication and disposition.

### Pertinent Facts and Procedural History

¶ 3 Appellant first appeared in juvenile court when he was thirteen years old, charged with felony theft. The juvenile court adjudicated him delinquent of misdemeanor theft after appellant's admission. He was placed on standard probation.

¶ 4 His second delinquency followed his admission to sexual abuse, a class four felony. This act occurred on April 30, 1999 at fourteen years of age. The juvenile court placed appellant in Juvenile Intensive Probation Services (JIPS).

¶ 5 The third adjudication of delinquency was for disorderly conduct committed on January 23, 2000. The probation officer recommended that appellant be committed to the ADJC because he was a threat to the community and to himself. Furthermore, appellant had been attending school sporadically and had been suspended from school for an alleged violent act. The juvenile court reinstated appellant on JIPS, and ordered that he be detained in the Violators of Intensive Probation Services (VIPS) program. Appellant successfully completed the program, which included victim awareness, anger management, substance abuse counseling, cognitive self change, life skills and journal writing.

¶ 6 However, on July 14, 2000 appellant was charged with felony theft, felony criminal damage, and violating probation. He was adjudicated delinquent after trial of misdemeanor theft and misdemeanor criminal damage.[1] The probation officer again recommended that appellant be committed to ADJC. The juvenile court reinstated appellant on JIPS. The court removed appellant from JIPS after four months and placed him on standard probation.

¶ 7 Appellant then began testing positive for marijuana in the summer of 2001 and was ordered to participate in the Arizona Addiction Treatment Program. On September 5, 2001 appellant was charged with possession of marijuana. On September 12, 2001 appellant was charged with violating his probation by using marijuana, failing to submit to drug testing and being involved in a burglary. In addition, appellant did not appear for a status hearing; he had not been attending school; and his mother and aunt reported that they had seen him under the influence of drugs. A third petition charged appellant with possessing alcohol in a separate burglary related case.

¶ 8 Appellant admitted to attempting to possess marijuana, a class one misdemeanor, in exchange for the dismissal of the other charges. The juvenile court adjudicated appellant delinquent of attempted possession of marijuana on November 9, 2001. The probation officer recommended that appellant be committed to ADJC. The Program Services Unit agreed with this opinion. The juvenile court determined that commitment to ADJC was appropriate:

> Niky, I have to agree with [the probation officer] and the program services staffing that there really isn't anything left in the probation aspects of the juvenile court that's going to be the ticket that you need to turn yourself around. I don't have any magic here, and I believe that your record justifies commitment to the Department of Juvenile Corrections. And they do have other programs that perhaps will be the motivating spark for you to turn yourself around and change your life.

¶ 9 The juvenile court committed appellant to a minimum of six months in ADJC in its disposition filed on November 29, 2001. Appellant timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12 120.21(A)(1)(1992) and Arizona Rule of Procedure for the Juvenile Court 88.

---

1. Appellant was also adjudicated to have violated the terms of his probation. The juvenile court found that it had erred on this charge and it was dismissed.

### Discussion

■ ¶ 10 Appellant asserts that the juvenile court abused its discretion when it committed appellant to ADJC. Specifically, appellant alleges the juvenile court (1) failed to explore all alternatives to commitment, and (2) did not have sufficient evidence showing that appellant posed a significant risk to the community. The juvenile court has broad discretion to determine an appropriate disposition for a delinquent juvenile. *In re Kristen C.*, 193 Ariz. 562, 563, ¶ 7, 975 P.2d 152, 153 (App.1999) (citations omitted). We will not alter that disposition absent an abuse of discretion. *Id.*

### 1. The New Guidelines.

¶ 11 Pursuant to A.R.S. § 8–246(C) the legislature mandated the Arizona Supreme Court to develop guidelines regarding the commitment of juveniles to ADJC:

> The supreme court in cooperation with the department of juvenile corrections shall develop *guidelines to be used by juvenile court judges in determining those juveniles who should be committed* to the department of juvenile corrections.

A.R.S. § 8–246(C) (Supp.2001) (emphasis added). The guidelines currently in effect were promulgated pursuant to the supreme court's administrative order of July 11, 2001. These guidelines replace the earlier guidelines issued pursuant to the supreme court's order of September 29, 1995. We have not previously construed the new guidelines.

■ ¶ 12 With regard to length of stay guidelines we previously stated:

> It is important to note that these guidelines are just that: guidelines; they are not mandatory and do not place constraints on the juvenile court's discretion to determine the appropriate length of stay. The statute requires only that the court consider the guidelines, which the court did here.

*Pinal County Juv. Delinquency Action No. JV–9404492*, 186 Ariz. 236, 238, 921 P.2d 36, 38 (App.1996). The same rationale applicable to guidelines to determine the minimum length of stay also applies to guidelines to determine whether a commitment to ADJC is in fact appropriate. *In re Melissa K.*, 197 Ariz. 491, 495, ¶ 14, 4 P.3d 1034, 1038 (App. 2000).

■ ¶ 13 Trial courts should not apply the guidelines in a mechanical fashion but determine whether, under the unique circumstances of the particular juvenile, commitment to ADJC is appropriate. In pertinent part, the new guidelines state:

> When considering the commitment of a juvenile to the care and custody of ADJC, the juvenile court shall:
>
> (a) Only commit those juveniles who are adjudicated for a delinquent act and whom the court believes require placement in a secure care facility for the protection of the community;
>
> (b) Consider commitment to ADJC as a final opportunity for rehabilitation of the juvenile, as well as a way of holding the juvenile accountable for a serious delinquent act or acts;
>
> (c) Give special consideration to the nature of the offense, the level of risk the juvenile poses to the community, and whether appropriate less restrictive alternatives to commitment exist within the community; and
>
> (d) Clearly identify, in the commitment order, the offense or offenses for which the juvenile is being committed and any other relevant factors that the court determines as reasons to consider the juvenile a risk to the community.

Arizona Code of Judicial Administration § 6–304(C)(1): Commitment Guidelines to the Arizona Department of Juvenile Corrections.[2]

¶ 14 As discussed in detail below, there are significant differences between the new

---

2. Length of stay guidelines have also been developed pursuant to A.R.S. § 41–2816(C) (1999) by ADJC and in cooperation with the juvenile court to assist the courts in imposing a minimum length of stay. ADJC Length of stay Guidelines (A) (effective July 1, 2001). However, these

guidelines are also just guidelines and do not place constraints on the juvenile court's discretion to determine a minimum length of stay. *Maricopa County Juv. Action No. JV–512016*, 186 Ariz. 414, 418, 923 P.2d 880, 884 (App.1996) (citation omitted).

guidelines and those previously in effect. The differences bear upon our resolution of this matter.

### 2. Pertinent Factors.

¶ 15 There are three factors upon which we focus given the claimed error: (1) protection of the community, (2) accountability, and (3) least-restrictive alternatives to ADJC.

#### A. *Protection of the Community.*

¶ 16 Guideline C(1)(a) recommends that the juvenile court "shall ... *[o]nly* commit those [delinquent] juveniles ... whom the court believes require placement in a secure care facility *for the protection of the community*." A juvenile must pose a risk to the community to fall within these guidelines. The legislative mandate for the juvenile department of corrections also provides that secure facilities are for the "custody, treatment, rehabilitation and education of youth who pose a threat to public safety, who have engaged in a pattern of conduct characterized by persistent and delinquent offenses that, as demonstrated through the use of other alternatives, cannot be controlled in a less secure setting, or who have had their conditional liberty revoked [.]" A.R.S. § 41–2816(A). Thus, under the new guidelines a threat to public safety (as before) is a factor. Under the statute, such a threat (or other compliance with § 41-2816) is required.

#### B. *Accountability.*

¶ 17 Guideline C(1)(b) introduces to these guidelines the role of juvenile *accountability*. It states that the court "shall ... [c]onsider commitment to ADJC as a final opportunity for rehabilitation of the juvenile, *as well as a way of holding the juvenile accountable* for a serious delinquent act [3] or acts." (Emphasis added.) The concept of accountability is a key concept not only in the treatment of juveniles but in giving effect to our laws. *See Kristen C.,* 193 Ariz. at 565, ¶ 14, 975 P.2d at 155 (considering the statutory scheme for juvenile restitution the court not-

ed that "[t]he end result of the statutory scheme is not unfair punishment, but rather *accountability* for unlawful conduct." (emphasis added)); Ariz. Const. art. 4, pt. 2, § 22 ("In order to preserve and protect the right of the people to justice and public safety, and to ensure fairness and *accountability* when juveniles engage in unlawful conduct, the legislature, or the people by initiative or referendum, shall have the authority to enact substantive and procedural laws regarding all proceedings and matters affecting such juveniles.").

¶ 18 Accountability contemplates the understanding that one's conduct has consequences. *Kristen C.,* 193 Ariz. at 564, ¶ 8, 975 P.2d at 154 (accepting the state's argument that "the order had the *rehabilitative purpose of holding juvenile accountable* for her own actions[.]" (emphasis added)). Particularly with juvenile offenders, who are in the formative years of their lives, employing the concept of accountability (that choices have consequences) is fundamental. Thus, the juvenile judge is to consider the need for accountability.

#### C. *Less Restrictive Alternatives.*

¶ 19 Finally, as to the relevant guidelines on this issue, guideline C(1)(c) provides that the juvenile court "shall ... [g]ive special consideration to the nature of the offense, the level of risk the juvenile poses to the community, and whether appropriate less restrictive alternatives to commitment exist within the community." In particular, the guidelines do not mandate that the less restrictive alternative be ordered. The guideline is to identify the less restrictive alternative and give "special consideration" to the nature of the offense at issue and the specific risk the juvenile poses. We view this as being akin to prior guidelines that we have construed to provide for "particularized consideration of juveniles on an individual basis." *Maricopa County Juv. Action No. J–90110,* 127 Ariz. 389, 392, 621 P.2d 298, 301 (App.1980).

---

**3.** The guidelines define "delinquent act," but do not define a "serious delinquent act." This is left to the discretion of the trial judge. We do not incorporate the definition of a "serious" offense

as set forth in A.R.S. § 13–604 (2001) as that definition was utilized in the 1995 guidelines and specifically discontinued in the 2001 guidelines.

¶ 20 Appellant makes the argument, relying upon *Melissa K.*, that absent any "evidence" produced by the trial court that it has "explored all alternatives," a commitment to ADJC would be an abuse of discretion. *Melissa K.* provides:

> Conspicuously absent from the record in this case is any evidence that the juvenile court explored all alternatives. For example, there is no evidence that the court attempted but failed to find a non-correctional secured drug and behavioral treatment program to which it could commit the juvenile. Without such evidence, we cannot find that the ADJC commitment of this juvenile was within the discretion of the juvenile court.

197 Ariz. at 495, ¶ 16, 4 P.3d at 1038. As the argument goes, this passage requires the trial judge to affirmatively set forth, and in fact provide findings demonstrating, that he or she explored all alternatives. We reject that argument. *Melissa K.* can also be read to simply instruct that it is better to have done so, which was not the case there. The *Melissa K.* court noted:

> We conclude, however, that on this record, the court *abused its discretion* in choosing an ADJC commitment as the means to treat this juvenile in a secure setting.

197 Ariz. at 494, ¶ 12, 4 P.3d at 1037 (emphasis added). Thus, the focus in *Melissa K.* was on whether the trial judge abused her discretion.

■ ¶ 21 Neither the new guidelines, the statute, nor our prior decisions require specific findings, or a record showing, that the trial judge has "explored all alternatives" to ADJC prior to an adjudication committing a juvenile to ADJC. We assume that judges follow and apply the law. We have long held that "[i]n reviewing the evidence we are mindful of the fact that the trial court will be *deemed to have made every finding necessary to support the judgment.*" *Maricopa County Juv. Action No. JS-3594*, 133 Ariz. 582, 585, 653 P.2d 39, 42 (App.1982) (emphasis added); *Marquess v. Spaner*, 15 Ariz. App. 342, 346, 488 P.2d 698, 702 (1971) ("[T]he trial court will be deemed to have made every finding necessary to support the judgment."); *Blackford v. Neaves*, 23 Ariz.

501, 503, 205 P. 587, 588 (1922) ("The trial court filed no findings of fact, but we must presume that its conclusions on every necessary issue were such as would support the judgment.").

### 3. The Commitment to ADJC.

■ ¶ 22 Applying the factors set forth above to the facts of this case, we find no abuse of discretion by the juvenile court judge in committing appellant to ADJC. Appellant has been under the supervision of the juvenile court since he was thirteen-more than three years. Appellant has been adjudicated delinquent on four occasions for different offenses. On February 24, 2000 the probation officer first expressed concern that appellant was a danger to himself and the community. Subsequently, appellant continued to commit delinquent acts, not attend school, run away from his family, test positive for marijuana, and not participate in court-ordered rehabilitation programs. The record shows that appellant was violent, sold and used drugs, and had no regard for the property of others.

¶ 23 The juvenile court has repeatedly implemented behavioral treatment for appellant as opposed to commitment to ADJC. The juvenile court specifically found that the juvenile was "at a high level of risk based upon the length of time that he has been engaging in delinquent behavior and his unwillingness to cooperate with the rehabilitative services as they have been offered." Appellant proved to the juvenile court, by his conduct, that he posed a risk to the community. The trial judge was well within her discretion to hold the appellant accountable for his conduct and commit him to ADJC.

### Conclusion

¶ 24 For the foregoing reasons, we affirm the juvenile court's adjudication and disposition of appellant.

CONCURRING: CECIL B. PATTERSON, Jr., Presiding Judge, and PHILIP HALL, Judge.