NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE ELIODORO M.,

No. 1 CA-JV 18-0137
FILED 8-16-2018

Appeal from the Superior Court in Maricopa County
No.  JV200621
The Honorable Joseph C. Welty, Judge

**AFFIRMED**

COUNSEL

Preciado Law Firm PLC, Phoenix
By Stephanie Preciado
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Gerald R. Grant
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Randall M. Howe joined.

---

**W E I N Z W E I G**, Judge:

**¶1**　　　　Eliodoro M. appeals the juvenile court's order adjudicating him delinquent of assault and the resulting disposition.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Eliodoro lunged at another juvenile in a Phoenix detention center, punching him several times before an officer could intervene and separate the boys.  After an investigation, the State filed a delinquency petition, charging Eliodoro with assault for intentionally or knowingly causing physical injury to the victim, a Class 1 misdemeanor.  A.R.S. § 13-1203(A)(1), (B).  Eliodoro denied the allegations.

**¶3**　　　　The State called several witnesses at the adjudication hearing, including the victim, two juvenile detention officers who witnessed the attack and the supervisor responsible for investigating the incident.  The evidence showed Eliodoro and the victim had exchanged words in the days before the attack.  On the day of the incident, Eliodoro admonished the victim in the cafeteria for throwing away a pear in the wrong trash can.  After lunch, the boys returned to their home unit. The victim sat down and was reading a book when Eliodoro suddenly ran toward him and started punching him.  The victim fell to the floor.  He did not fight back, instead using his hands to shield his face.  The attack ended after a detention officer tackled Eliodoro to the floor.  The victim reported having pain afterward and suffered a bruise on his shoulder.  He showed the bruise to a detention supervisor.

**¶4**　　　　The State offered a video-recording of the attack into evidence.  Defense counsel did not call any witnesses or present evidence and only cross-examined two of the State's witnesses.

**¶5**　　　　The juvenile court found the State had proved the assault charge beyond a reasonable doubt and adjudicated Eliodoro delinquent.

¶6        The court then conducted a disposition hearing to determine the appropriate consequence for Eliodoro's delinquent behavior.  It heard from Eliodoro, his mother, the State, the juvenile probation officer, the guardian ad litem and defense counsel.  The court expressly considered various factors, including Eliodoro's criminal history, anger management problems and substance abuse issues.  The court acknowledged the recommendation from a psychological evaluation to place Eliodoro in a residential treatment center, but noted that none of the centers would accept Eliodoro because of his past misconduct.  The court then committed Eliodoro to the Arizona Department of Juvenile Corrections ("ADJC") for a minimum stay of thirty days.

¶7        Eliodoro timely appealed.  We have jurisdiction pursuant to Ariz. Const. art. 6, § 9, and A.R.S. § 8-235(A).

## DISCUSSION

### 1.    Sufficiency of Evidence.

¶8        Eliodoro first contends the juvenile court had insufficient evidence to find he assaulted the victim in violation of A.R.S. § 13-1203(A)(1).  This court will reverse for insufficient evidence only if "there is a complete absence of probative facts to support the judgment or if the judgment is contrary to any substantial evidence." *In re John M.*, 201 Ariz. 424, 426, ¶ 7 (App. 2001).  We view the record in the light most favorable to sustaining the adjudication and do not reweigh the evidence on appeal. *Id.*

¶9        A person commits assault under A.R.S. § 13-1203(A)(1) by "[i]ntentionally, knowingly or recklessly causing any physical injury to another person."  "Physical injury" is defined as "the impairment of physical condition."  A.R.S. § 13-105(33).

¶10        Eliodoro does not dispute that he pounced on and repeatedly punched the victim.  He argues only that the evidence failed to establish he caused a physical injury to the victim.  He points to a lack of photographic evidence and minor discrepancies in the victim's recollection about where the undisputed blows landed.  We are not persuaded.

¶11        The State presented substantial evidence that Eliodoro injured the victim.  The victim testified that Eliodoro punched him about seven times and he suffered a bruise on his right shoulder.  The victim said he almost blacked out during the attack and was in pain afterward.  The victim shared his bruise and story with a detention supervisor.  We affirm the delinquency order. *See In re James P.*, 214 Ariz. 420, 425, ¶ 24 (App. 2007)

3

("[O]ur role is to determine if the evidence adduced at the hearing is sufficient to support the court's adjudication.").

## 2.     Disposition.

¶12         Eliodoro next contends the juvenile court erred by committing him to the ADJC.  "The juvenile court has broad discretion to determine an appropriate disposition for a delinquent juvenile."  *In re Niky R.*, 203 Ariz. 387, 390, ¶ 10 (App. 2002).  We will not alter its disposition absent an abuse of discretion.  *Id.*

¶13         When determining whether to commit a juvenile to the ADJC, a juvenile court must consider the guidelines in the Arizona Code of Judicial Administration § 6-304(C)(1) ("Guidelines"), which provide:

> a.  Only commit those juveniles who are adjudicated for a delinquent act and whom the court believes require placement in a secure care facility for the protection of the community;
>
> b.  Consider commitment to ADJC as a final opportunity for rehabilitation of the juvenile, as well as a way of holding the juvenile accountable for a serious delinquent act or acts;
>
> c.  Give special consideration to the nature of the offense, the level of risk the juvenile poses to the community, and whether appropriate less restrictive alternatives to commitment exist within the community; and
>
> d.  Clearly identify, in the commitment order, the offense or offenses for which the juvenile is being committed and any other relevant factors that the court determines as reasons to consider the juvenile a risk to the community.

¶14         The Guidelines are not applied in a mechanical fashion, but instead used to "determine whether, under the unique circumstances of the particular juvenile, commitment to the ADJC is appropriate."  *Niky R.*, 203 Ariz. at 390, ¶ 13.

¶15         The juvenile court considered various factors in deciding to commit Eliodoro to the ADJC.  The court considered, for example, Eliodoro's criminal history, anger management problems and substance abuse issues.  The court also acknowledged the recommendation for placement in a residential treatment center, but lamented that no treatment

center would accept Eliodoro because of his past misconduct. The decision was proper.

## CONCLUSION

**¶16** We affirm the juvenile court's delinquency adjudication and disposition.



AMY M. WOOD • Clerk of the Court
FILED:  AA