NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE DOMINIC C.

No. 1 CA-JV 18-0194
FILED 10-23-2018

Appeal from the Superior Court in Mohave County
No. L8015JV201407057
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Harriette P. Levitt Law Offices, Tucson
By Harriette P. Levitt
*Counsel for Appellant*

Mohave County Attorney's Office, Kingman
By Deborah L. Herbert
*Counsel for Appellee*

**MEMORANDUM DECISION**

Acting Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Randall M. Howe and Chief Judge Samuel A. Thumma joined.

**C R U Z**, Judge:

¶1        Dominic C. (the "Juvenile") appeals an order from the superior court requiring that he register as a sex offender until he reaches the age of twenty-five.  Because the superior court did not abuse its discretion, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        In November 2014, as a result of a Disposition Agreement accepted by the court, the Juvenile was adjudicated delinquent of sexual conduct with a minor under twelve years of age, Arizona Revised Statutes ("A.R.S.") § 13-1405, a class 2 felony.  The Disposition Agreement addressed sex offender registration as follows:

> Sexual offender registration and registration terms will not be ordered at disposition in this matter if the Juvenile is rated as a moderate or lower risk to reoffend pursuant to a sexual behavior risk assessment to be conducted by Delynn Lamb ["Lamb"] . . . however, the court may require the Juvenile to register as a sex offender pursuant to A.R.S. § 13-3821(D) at disposition if the Juvenile is rated as higher than a moderate risk to reoffend by [Lamb]. ***Further, in any case, this option under A.R.S. § 13-3821(D) shall be held open and the court may impose sexual offender registration and registration terms at a later date if the Juvenile violates probation and the court determines registration requirements to be appropriate***[.]

(Emphasis added).

¶3        Lamb conducted a sexual behavior risk assessment on the Juvenile and concluded "the best estimate of his risk for [re-offense] is moderate to moderate high."  At the disposition hearing in December 2014, the court placed the Juvenile in an intensive probation program until his eighteenth birthday; however, while placed in an intensive rehabilitation facility—Blue Ridge—the court ordered that probation would be temporarily reduced to standard supervision.

¶4        Later in December 2014, while at Blue Ridge, the Juvenile "engaged in deviant sexual activities," including engaging in oral sex with a peer over the age of twelve and exposing his penis to another peer.  An April 2015 report indicated that in March 2015, the Juvenile "asked a peer

to masturbate in his presence," and that he touched a peer's genitals while they were seated on a couch with their hands concealed beneath pillows.

**¶5** In October 2015, the Juvenile underwent another psychosexual evaluation and was found to be a moderate to high risk to re-offend sexually. Because of this and his behavior at Blue Ridge, he was placed at Youth Development Institute ("YDI") Level 1, a facility that provided a higher level of care.

**¶6** Once at YDI, the Juvenile's behaviors largely improved until June 2016. That month, a report indicates that the Juvenile showed signs of regression: he admitted "being moments away from engaging in" a sex act with his roommate, with whom he also engaged in sexual discussions and made plans "to sexually act out." After this incident, the Juvenile was assigned to his own room, and he again showed signs of improvement. Accordingly, the Juvenile was allowed to move to the less restrictive YDI Level 2. Despite subsequent incidents of improper sexual activity, the Juvenile was allowed to stay on at Level 2, and in December 2017, the Juvenile entered community placement in a group home. Soon after, he began an intensive sexual rehabilitation outpatient program called Right of Way ("ROW").

**¶7** While in ROW, the Juvenile admitted to having accessed pornography on his school laptop; he failed to attend two individual sessions; he was late to several other sessions; and he was asked to leave two other group sessions because he was sleeping through them.

**¶8** The Juvenile was discharged from ROW approximately three months after he began the program. In the discharge report ROW filed, they indicated the Juvenile "often demonstrated difficulty adhering to the expectations of the program and his terms of probation, and exhibited an impulsive and often defiant demeanor." The report further noted that, when he did cooperate, such cooperation "appeared superficial." He was therefore discharged after ROW personnel determined that the Juvenile had "reached maximum benefit" from the program, "because of his wavering participation," and the unlikelihood that he would "make any further advances and successfully complete the program" before his eighteenth birthday. Based on an evaluation performed in April 2018, the discharge report noted that his "estimated sexual re-offense risk" was "high."

**¶9** On May 4, 2018, the Juvenile's probation officer filed a petition to revoke his probation, alleging several violations (including

failing to satisfy the terms of the probation). After a contested evidentiary hearing on the petition to revoke, the court found the Juvenile had violated his probation. The court found, among other things, that the Juvenile had violated Condition 5 of his probation, which required him to "actively participate in sex offender treatment, and remain in such treatment at the direction of [his] probation officer." The court based its finding on evidence that the Juvenile had slept during group classes, failed to show up to at least one class, and arrived at another class unprepared. The court also found that the Juvenile violated Condition 9, which required he "not view any sexually stimulating or sexually oriented material as deemed inappropriate by treatment staff." The evidence reflected, and the Juvenile admitted, that the he viewed pornography on his school computer.

¶10 On review of the record before it—including discharge reports from YDI and ROW, the original disposition report and sexual behavior risk assessment conducted by Lamb, testimony by the Juvenile's probation officer, attorney arguments, and statements from the Juvenile, the victim in his original case, and the victim's family—the court reinstated the Juvenile's standard probation, ordered him detained until 6 p.m. the day before his eighteenth birthday, and ordered he register as a sex offender until he reached the age of twenty-five.

¶11 In making its decision, the court expressed the concern "that when the juvenile was released to a lower level of supervision and structure, that he seems to have not maintained the skills that he had learned at YDI and not been able to maintain appropriate responses in connection with that." Accordingly, in consideration of all the factors before it, the court found it appropriate "to protect the community," and thus ordered the Juvenile to register as a sex offender until he reaches age twenty-five.

¶12 The Juvenile timely appeals. We have jurisdiction pursuant to A.R.S. § 8-235(A).

**DISCUSSION**

¶13 Superior courts have broad discretion to determine an appropriate disposition for a delinquent juvenile. *In re Niky R.*, 203 Ariz. 387, 390, ¶ 10 (App. 2002) (citation omitted). "We will not disturb a [superior] court's disposition order, including the decision whether to require a juvenile to register as a sex offender, absent an abuse of discretion." *In re Nickolas T.*, 223 Ariz. 403, 404, ¶ 4 (App. 2010) (citation omitted). A court abuses its discretion where the record fails to provide

substantial support for its decision. *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456 (1982); *see also Torres v. N. Am. Van Lines, Inc.*, 135 Ariz. 35, 40 (App. 1982) (discretion abused if "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons").

**¶14**     The Juvenile appeals the superior court's order that he register as a sex offender until he reaches age twenty-five. The Juvenile does not contend that the court was without authority to do so; merely that the court abused its discretion. As part of his disposition agreement, the Juvenile agreed to terms of probation that deferred sex offender registration; but the court stated it reserved authority to order such registration pursuant to A.R.S. § 13-3821(D) if he was rated higher than a moderate risk to sexually re-offend, or "if the Juvenile violates probation and the court determines registration requirements to be appropriate."

**¶15**     Section 13-3821(D) authorizes the court to "require a person who has been adjudicated delinquent for an act that would constitute an offense specified in subsection A or C of this section to register pursuant to this section. Any duty to register under this subsection shall terminate when the person reaches twenty-five years of age." The Juvenile was adjudicated delinquent of sexual conduct with a minor under twelve years of age, A.R.S. § 13-1405, a class 2 felony; this act is listed under A.R.S. § 13-3821(A)(4), as required by A.R.S. § 13-3821(D), *supra*.

**¶16**     Before the original disposition hearing, Lamb assessed the Juvenile as a moderate to moderate high risk of sexually re-offending—in other words, higher than moderate. That alone provided the court sufficient grounds to order the Juvenile to register as a sex offender. More recent and arguably more concerning, though, is the fact that the Juvenile was discharged from the ROW program "because of his wavering participation" and the unlikelihood that he would "make any further advances and successfully complete the program" before his eighteenth birthday, at which time he was assessed a sexual re-offense risk level of "high."

**¶17**     Next, the Juvenile concedes that he violated the terms of his probation in April 2018 and does not appeal any of the court's findings from the hearing where the judge ordered the Juvenile to register as a sex offender. Accordingly, though only one was required, both of the terms in the disposition agreement, which the court indicated would trigger it to order the Juvenile to register as a sex offender were satisfied.

**¶18** Finally, the record is replete with evidence to support the court's finding that registration requirements were appropriate to protect the community.

## CONCLUSION

**¶19** Because the superior court did not abuse its discretion by ordering the Juvenile to register as a sex offender until the age of twenty-five, we affirm.

