NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE DELINQUENCY OF E.L.

No. 1 CA-JV 25-0086

FILED 01-21-2026

Appeal from the Superior Court in Maricopa County
No.  JV210647
The Honorable Michele Lawson, Judge, *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Office of the Public Advocate, Phoenix
By A. Jason Max
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Philip D. Garrow
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge Daniel J. Kiley and Judge Brian Y. Furuya joined.

**P A T O N**, Judge:

¶1 E.L. appeals his commitment to the Arizona Department of Juvenile Corrections ("ADJC") for violating a term of his probation. After reviewing the entire record, his counsel found "no arguable issues for an appeal" and requested we review the record for reversable error under *Anders v. California*, 386 U.S. 738 (1967) and *Maricopa Cnty. Juv. Action No. JV-117258*, 163 Ariz. 484 (App. 1989) (applying *Anders* procedure to juvenile delinquency proceedings). We gave E.L. an opportunity to file a supplemental brief, but he did not do so. After reviewing the record, we find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 E.L., born in April 2007, is 18 years old. In September 2024, he was arrested for possession of narcotics and paraphernalia and taken to juvenile detention. He was released the following day, and about two weeks later he ran away from home.

¶3 In December 2024, E.L., who still had not returned home, failed to appear at the advisory hearing. The superior court issued a bench warrant for his arrest. Later that month, E.L. called his mother and asked her to pick him up in California. She brought him home and contacted his probation officer because of his outstanding warrant.

¶4 E.L. was arrested and transported to the juvenile detention center on December 31, 2024. The superior court held an advisory hearing that same day. The court ordered that E.L. remain detained. It also ordered E.L. to undergo a psychological evaluation.

¶5 E.L.'s psychological evaluation recommended he be placed in a secure, inpatient facility that could address his significant substance abuse issues and stabilize his mood. The evaluator noted E.L. was a "high risk for danger to himself" and needs "intense treatment for a substance use disorder, mood, as well as an eating disorder." The evaluator also observed that a "major hurdle is that he will be age 18 within a few months" and "with community-based interventions [he is] likely to be unsuccessful."

¶6 On January 21, 2025, the superior court held a change of plea hearing. E.L. pled guilty to possession of drug paraphernalia, a class 6 undesignated felony. *See* A.R.S. § 13-3415. The court set a disposition hearing, which it deferred twice due to problems finding E.L. an appropriate placement.

¶7 On March 17, 2025, the superior court held the continued disposition hearing. The court ordered E.L. be placed on standard

probation for one year and Juvenile Electronic Tracking System ("JETS") for 45 days. The court also ordered the Department of Child Safety to take custody of E.L. and determine an appropriate placement for him.

**¶8** On April 16, 2025, E.L. violated his probation by cutting off his JETS monitor and leaving the group home without permission. Two days later, the group home staff found him hiding in a bed in the facility after he broke through a bedroom window. They contacted the police, who arrested E.L., and took him to the juvenile detention center.

**¶9** On April 19, 2025, the superior court held an advisory hearing, and E.L. admitted to violating his probation. The probation department had contacted the group home staff the day before to inquire about E.L. returning to the group home. A group home representative told probation that E.L. "would not be able to [return] to the group home because he presented a significant risk to himself, the other youths, and staff." E.L. remained in detention following the hearing.

**¶10** On April 29, 2025, the superior court held a disposition hearing on E.L.'s probation violation. Probation expressed concern that because E.L. would soon be 18, any treatment facility other than ADJC would not be a secure placement because he could sign himself in or out of the facility. The State and probation thus recommended E.L. be committed to ADJC for no less than 30 days. E.L. asked the court to defer disposition because his behavioral health team was seeking alternative placements to ADJC. His team identified Purpose Healing Center as a possible secure treatment center. The court deferred disposition, concluding it had two options: ADJC or the Purpose Healing Center. The court also emphasized that it considered "a secure placement" as "very important."

**¶11** The superior court held the continued disposition hearing on May 19, 2025. The probation department informed the court that the Purpose Healing Center declined to admit E.L. into its program because of his eating disorder. It reported there were no other placements willing to accept E.L. at that time. E.L.'s guardian ad litem agreed with the probation department's recommendation to ADJC, saying E.L. needs inpatient treatment and there were no alternatives to ADJC. E.L.'s high-needs case manager also reported he could not locate any secure treatment centers.

**¶12** E.L. objected to commitment to ADJC, arguing commitment was inappropriate under the Arizona Supreme Court's Commitment Guidelines ("Commitment Guidelines") because of the nature of his offense. *See* Ariz. Code of Jud. Admin. § 6-304(C)(1). He also distinguished

his facts from our precedent in *In re Niky R.* because he was not a chronic delinquent offender. 203 Ariz. 387, 392, ¶ 23 (App. 2002). He requested the court place him on juvenile intensive probation with electronic monitoring.

**¶13** The superior court found that without treatment E.L. presented a risk to the community and a "substantial risk to [his] own safety." The court stated that he needed to be in a secure placement. It also found there were no less restrictive alternatives to ADJC. The court therefore designated his adjudication for possession of drug paraphernalia as a class 6 felony and committed him to ADJC for a minimum of 30 days.

**¶14** E.L. timely appealed. Ariz. R.P. Juv. Ct. 603(a)(1)(A). We have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

**¶15** Our review of the record confirms that all proceedings were conducted in compliance with the Arizona Rules of Procedure for the Juvenile Court. E.L. knowingly, voluntarily, and intelligently admitted to the probation violation. *See* Ariz. R.P. Juv. Ct. 220(c)(1). He was present and represented by counsel at all hearings. *See* A.R.S. §§ 8-307(A), -221(A); Ariz. R.P. Juv. Ct. 206(a), 208(a). He was given the opportunity to speak at his disposition hearing. And the court imposed a disposition within its discretion. *See* A.R.S. § 8-341(A)(1)(e).

**¶16** The superior court's disposition order also expressly stated its reasons for committing E.L. to ADJC. The court found, after considering the statutory factors:

> The juvenile has untreated substance use that presents a risk to the juvenile and the community.
>
> While on probation, the juvenile removed an electronic monitoring device and left placement.
>
> Further rehabilitation requires a more secure facility, and there is no least restrictive alternative.

The court's written findings demonstrate it considered the Commitment Guidelines, including protecting the community, rehabilitating the juvenile, the nature of the offense, and less restrictive alternatives. *See* Ariz. Code of Jud. Admin. § 6-304(C)(1). Although the court must consider these Commitment Guidelines, it can deviate from them when circumstances

warrant. *In re Niky R.*, 203 Ariz. at 390, ¶¶ 12-13; *In re Melissa K.*, 197 Ariz. 491, 495, ¶ 14 (App. 2000) ("A juvenile court is not required to follow the guidelines, but it must consider them in making disposition.").

**¶17** On this record, the court did not abuse its discretion when it committed E.L. to ADJC. *In re John G.*, 191 Ariz. 205, 207, ¶ 8 (App. 1998) (noting abuse of discretion standard for review of disposition orders).

## CONCLUSION

**¶18** We affirm. The filing of this decision ends E.L.'s counsel's obligation to represent E.L. in this appeal. Counsel need only inform E.L. of the outcome of the appeal and his future options, unless counsel finds an issue meriting a petition for review to the Arizona Supreme Court. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984); Ariz. R.P. Juv. Ct. 609.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR