IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



FILED BY CLERK

MAR 23 2007

COURT OF APPEALS
DIVISION TWO

|  |  |  |
|---|---|---|
| | ) | |
| | ) | 2 CA-JV 2006-0049 |
| IN RE NATALIE Z. | ) | DEPARTMENT B |
| | ) | |
| | ) | **O P I N I O N** |
| | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. JV-200300627

Honorable Gilberto V. Figueroa, Judge

AFFIRMED

Robert Carter Olson, Pinal County Attorney
  By Susan Crawford
Florence
Attorneys for State

Mary Wisdom, Pinal County Public Defender
  By Teri L. Shaw
Florence
Attorneys for Minor

E C K E R S T R O M, Presiding Judge.

¶1     The juvenile court entered orders adjudicating Natalie Z. delinquent for aggravated assault and placing her on juvenile intensive probation for twelve months. Natalie challenges the juvenile court's finding that she was responsible for the delinquent conduct, claiming the court committed various errors in rejecting her defense of insanity. We affirm.

¶2     We view the evidence in a light most favorable to sustaining the juvenile court's ruling. *In re John M.*, 201 Ariz. 424, ¶ 7, 36 P.3d 772, 774 (App. 2001). On August 30, 2005, Natalie was a detainee in the Pinal County Juvenile Detention Center; twice, she had attempted suicide. When she refused to return to her cell as instructed by detention center staff, additional staff members were summoned. Among those who responded were detention officer Susan Patterson and detention center manager Gilbert Contreras. Natalie repeatedly refused their commands to enter her cell, prompting Patterson and Contreras to forcibly take her there. Natalie resisted, causing the specialized suicide prevention clothing she was wearing to open, exposing her. Contreras then let go, and Natalie charged at Patterson, striking Patterson's face with her head and causing Patterson to fall against a wall. Patterson suffered a concussion and missed four days of work as a result of her injuries.

¶3     The state charged Natalie by amended delinquency petition with aggravated assault in violation of A.R.S. § 13-1204(A)(10)(a)(iv) and (b).[1] She asserted a defense of

_____

[1]Under that statute, a person commits aggravated assault if the person "[i]s imprisoned or otherwise subject to the custody of . . . [a] juvenile detention facility of a city or county" and "[c]ommits an assault knowing or having reason to know that the victim is acting in an

2

"insanity," which the juvenile court understood as a request that the court find her "responsible but insane" rather than responsible for the charged delinquent act. Without objection, the court applied the test for insanity contained in A.R.S. § 13-502(A), which states:

> A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong. A mental disease or defect constituting legal insanity is an affirmative defense. Mental disease or defect does not include disorders that result from acute voluntary intoxication or withdrawal from alcohol or drugs, character defects, psychosexual disorders or impulse control disorders. Conditions that do not constitute legal insanity include but are not limited to momentary, temporary conditions arising from the pressure of the circumstances, moral decadence, depravity or passion growing out of anger, jealousy, revenge, hatred or other motives in a person who does not suffer from a mental disease or defect or an abnormality that is manifested only by criminal conduct.

In support of her defense, Natalie presented the testimony of Scott Silberman, a licensed psychologist who had evaluated Natalie in December 2003 and December 2005. The purpose of the 2005 evaluation had been to assess both her competency to contest the delinquency petition and her state of mind at the time of the offense.

¶4 Dr. Silberman testified that Natalie suffered from "Bipolar Type I" disorder, a subtype of bipolar disorder characterized by "more severe and debilitating . . . manic episodes" than those exhibited by persons with Type II of the disorder. He concluded Natalie had likely been "in the middle of" such a manic episode at the time of the offense.

official capacity as an employee of" the detention facility. § 13-1204(A)(10)(a)(iv) and (b).

3

On direct examination, he testified that it was "likely that [Natalie] did not know what she was doing was wrong, nor did she even take that into account at the moment." However, under further examination by the court, Silberman agreed it was equally likely Natalie had reacted angrily to the conditions in which she found herself, including that she had been detained and made to wear suicide prevention clothing referred to as a "turtle suit."

¶5    Ruling from the bench, the juvenile court made several remarks, including the following.

> It is likely that the behavior was the result of the temporary conditions arising from the pressure of her circumstances, that . . . she was in isolation, she was on suicide watch, she was, as the doctor indicated, for at least a period of two years, had been very angry, not just at her mother, but at everything going on around her.
>
> I cannot find by clear and convincing evidence that the mental disease or a manic episode were the sole causes of her behavior. It is likely and perhaps even highly likely . . . that a manic episode was cycling, but I think I have to take into account the fact that she had also voluntarily failed to adhere to her medical regimen. . . . Based on that evidence and the testimony from the doctor that it was just highly likely and not clear and convincing to him that the behavior was the result of the mental disease or defect, I find that the defendant has failed to carry the burden of establishing by clear and convincing evidence as required in [§] 13-502(C) that the child was insane at the time of the offense.

The court then adjudicated Natalie delinquent for aggravated assault and dismissed another charge not at issue in this appeal.

¶6    On appeal, Natalie first claims the juvenile court "erred in applying" § 13-502 when she had asserted an insanity defense "pursuant to A.R.S. § 8-291.03." We reject this

4

argument because § 8-291.03 pertains, in relevant part, only to the procedure for procuring a mental health expert's pretrial "screening report" that includes information about the juvenile's mental status and "mental disease, defect or disability," if any, at the time of the alleged offense. § 8-291.03(A). And, the juvenile court's application of § 13-502 consisted merely of the court's use of Arizona's legal test for insanity and its assignment of the burden of proof to meet that test by clear and convincing evidence to the juvenile. These questions are not addressed in § 8-291.03(A), which prescribes neither a procedure for asserting a defense of insanity nor a substantive legal test for proving insanity in the juvenile context.

¶7　　　　Although Natalie is correct that § 13-502 does not expressly apply to juveniles accused of delinquent acts, she presents no authority for her implicit proposition that a test for insanity other than that set forth in § 13-502 applies in the juvenile court, nor any rationale why any such alternative standard should apply. To the contrary, the legislature has required that we define delinquent juvenile behavior with reference to adult offenses, most of which are described in Title 13, A.R.S. *See* A.R.S. § 8-201(10) (defining "[d]elinquent act" to include "an act by a juvenile that if committed by an adult would be a criminal offense"). The boundaries of adult criminal culpability are defined no less by the statutory defenses set forth in Title 13, including the insanity defense set forth in § 13-502. Accordingly, we have previously utilized the statutory provisions of Title 13 in evaluating whether a juvenile has raised a successful justification defense. *See In re Roy L.*, 197 Ariz. 441, ¶¶ 21-22, 4 P.3d 984, 990 (App. 2000) (juvenile's justification defense failed where facts did not meet criteria prescribed by A.R.S. § 13-404(A)). We find no error in the

juvenile court's relying on § 13-502 in the manner it did here, let alone the fundamental and prejudicial error Natalie is required to show to justify a reversal of her adjudication based on a claim she failed to raise below. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005).

¶8　　　　In a related argument, Natalie claims that even if the juvenile court correctly applied § 13-502, it nevertheless erred by "consider[ing] only part of the language in [the statute]." She points out that "[h]er diagnosis also included psychotic features," presumably suggesting she must have been psychotic at the time of her offense. In essence, Natalie contends that § 13-502(A) prohibits a juvenile court from rejecting an insanity defense on the remaining statutory criteria once it has acknowledged that a juvenile suffers from a mental disease or disorder. But the express language of that provision makes clear that the mere existence of a mental disease or defect is not alone sufficient to support a finding of guilty except insane. Rather, the mental disease or defect must be of "such severity that the person did not know the criminal act was wrong." *Id*.

¶9　　　　Moreover, nothing in the statute suggests that juveniles otherwise afflicted with a mental disease or disorder must be deemed insane even when their offense has been motivated by a condition that, under § 13-502, does not constitute legal insanity. Natalie suggests that the last clause of § 13-502(A) can be read to apply the exclusions only to persons who "do[] not suffer from a mental disease or defect or an abnormality." Although this inartfully drafted clause might be so read in isolation, we do not believe that language modifies the entire list of "[c]onditions that do not constitute legal insanity" but only the last

6

phrase of that sentence. Nor could Natalie's interpretation of that language be harmonized with the rest of § 13-502(A) because, under the first sentence of that subsection, "a person who does not suffer from a mental disease or defect" would not be considered insane in any event—and therefore it would be illogical and redundant for the legislature to add a list of exclusions triggered only as to persons *not* suffering from a mental disease or defect. Thus, we can only interpret the last clause of the subsection as creating a catch-all exclusion for types of motivations found in those who are not legally insane. *See State v. Rodriguez*, 205 Ariz. 392, ¶ 11, 71 P.3d 919, 923 (App. 2003) (even if statutory language taken alone susceptible to different interpretations, we interpret statute as a whole in relation to its purpose).

¶10 In short, pursuant to the requirements of § 13-502(A), the juvenile court's assessment of whether a juvenile suffers from a mental disease or defect is merely a threshold determination that does not require the court to find the juvenile is insane. Rather, the court must then address whether that defect was so severe that it deprived the juvenile of the ability to know the delinquent act was wrong and whether, even if the juvenile's moral judgment was impaired, that impairment arose from some other cause excluded as a basis for legal insanity. Thus, we find the juvenile court did not violate the provisions of § 13-502(A) when it acknowledged Natalie's bipolar disorder but also concluded that her assaultive behavior arose from other "[c]onditions that do not constitute legal insanity."

¶11 Next, Natalie contends "[t]he juvenile court impermissibly raised the standard [of proof on the issue of insanity] from clear and convincing to beyond a reasonable doubt

7

by finding that the manic episode was not the sole cause of her behavior." As best we understand this argument, Natalie suggests the court rejected her insanity defense based on a mere reasonable doubt that Natalie was not insane and implicitly required the evidence of insanity to be "certain and unambiguous." As evidence of that, Natalie emphasizes that the court acknowledged it was "highly likely" her manic episode had been "cycling" at the time of the assault, yet rejected that she was insane. But, as discussed above, the court could have found that Natalie had been exhibiting mania arising from her bipolar disorder and nevertheless found her to be sane if it concluded either that: (1) the mania did not prevent her from knowing her criminal acts were wrong or (2) she was motivated to assault the guards for reasons not related to her mania. *See* § 13-502(A). Thus, the juvenile court was required by Arizona statute to consider factors beyond whether Natalie was manifesting symptoms of bipolar disorder at the time of the incident. That it properly did so does not demonstrate that it utilized an incorrect burden of proof in assessing Natalie's insanity defense. To the contrary, the juvenile court twice emphasized that it was applying the "clear and convincing evidence" standard in assessing Natalie's defense.[2]

¶12 Nor do we agree with Natalie's implicit contention that the evidence presented does not support the court's conclusion. Natalie's expert, Dr. Silberman, conceded it was

---

[2]The juvenile court appears to have misconstrued the relevant standard of clear and convincing evidence by requiring a showing of greater certainty than "highly likely." In fact, our supreme court has equated the two standards. *Kent K. v. Bobby M.*, 210 Ariz. 279, ¶ 25, 110 P.3d 1013, 1018-19 (2005) (defining "clear and convincing" as "'highly probable'"), *quoting Black's Law Dictionary* 1201 (7th ed. 1999). Natalie has neither challenged the juvenile court's ruling on this basis nor suggested that the court's confusion was prejudicial in the context of the case.

just as likely that Natalie's behavior had been the result of her angry response to the circumstances of the encounter as her disorder. Moreover, the juvenile court was free to take into account that Silberman had not examined Natalie for the second time until approximately four months after the offense. The court could also have considered the testimony of eyewitnesses Patterson and Contreras, which included evidence from which the court could have inferred Natalie had been adamant and purposeful in her refusal to enter her cell and therefore also knew her assaultive conduct was wrong. Because there was substantial evidence that Natalie understood the nature of her acts, we reject Natalie's assertion that the juvenile court must have applied the wrong standard of proof when it found the manic episode was not the sole cause of her behavior.[3]

¶13     Finally, Natalie contends the juvenile court "erred by considering the consequences of a ruling of insanity in determining the guilt or innocence of the juvenile." But, the record does not support her characterization of the court's actions. The juvenile court did observe that alternatives for disposition would likely be the same whether the court adjudicated Natalie delinquent or found her "responsible but insane." After both parties had rested and the court had found Natalie had not met her burden of proof on the issue of insanity, the court also commented on its understanding of what its dispositional alternatives might have been had she met her burden. However, the court clearly stated it had not based

---

[3]We note that A.R.S. § 13-502(A) sets forth no requirement that the juvenile's mental defect be the sole cause of his or her behavior to support a verdict of "guilty except insane." Natalie has not challenged the court's ruling on this basis nor is it clear that the juvenile court necessarily came to that erroneous conclusion when it made the factual observation that her behavior was caused by a variety of factors including her mental defect.

9

its decision on those considerations. In addition, before offering the commentary to which we refer, the juvenile court stated the bases for its finding on the record.

¶14 Natalie has failed to demonstrate the presence of reversible error. Accordingly, we affirm her adjudication of delinquency and disposition.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
PHILIP G. ESPINOSA, Judge