NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re FERNANDO R.

No. 1 CA-JV 13-0222
FILED 3-27-2014

Appeal from the Superior Court in Maricopa County
No.  JV558594
The Honorable Shellie Smith, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Office of the Public Advocate, Phoenix
By Katherine Badrick
*Counsel for Appellant Fernando R.*

Maricopa County Attorney's Office, Phoenix
By Andrea L. Kever
*Counsel for Appellee State of Arizona*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

---

**S W A N N**, Judge:

¶1          Fernando R. appeals from the juvenile court's disposition order committing him to the Arizona Department of Juvenile Corrections ("ADJC"). Fernando contends that the court abused its discretion by failing to understand alternatives to commitment, by relying on factual mistakes in its disposition, and by failing to consider the Arizona Supreme Court's guidelines for the commitment of minors to ADJC ("Commitment Guidelines"). We find no such errors, and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          At age 15, Fernando pled delinquent to theft and possession of marijuana, both class 1 misdemeanors, and was placed on standard probation in February 2013. The court found Fernando in violation of probation the next month, but he failed to appear for disposition after cutting off his electronic monitoring unit and running away from home. He was eventually arrested and placed on intensive probation, but within a week his mother informed authorities that he had stolen her cell phone and $200 of her rent money before running away once more.

¶3          Fernando was detained again in June 2013 for shoplifting and for stealing a bicycle, which he told the arresting police officer that he had sold for marijuana. He pled delinquent to one count of misdemeanor theft and the court set disposition for July 12. Fernando thereafter neglected to submit to required drug screenings, committed several house arrest violations and ultimately failed to appear for disposition. He possessed drug paraphernalia when police arrested him in mid-July, and the court reset disposition for July 19.

¶4          Several parties presented disposition recommendations at the July 19 hearing. Fernando's probation officer and his guardian ad litem both recommended commitment to ADJC. The guardian ad litem explained that while the probation department had been willing to place Fernando in a "residential treatment center, a locked facility," Fernando had responded "that he just absolutely would not do that [because h]e

would not follow the rules [and h]e wasn't going to participate." Fernando's mother added, "I really don't think that he's going to obey the rules either, because he's been telling me that he's going to do whatever he can to run away."

¶5        In contrast, defense counsel advocated for placement in a residential treatment center over commitment because Fernando had only misdemeanor adjudications on his record and suffered from low cognitive functioning.  Defense counsel and Fernando insisted that even though he had been unwilling to explore residential treatment in the past, he was now ready to remain in detention until such a placement became available.  Having considered the respective recommendations, the court deferred disposition and asked the probation department to reevaluate Fernando for residential treatment.  The court told Fernando that it would be inclined to follow the probation department's updated recommendation, and that his behavior in detention until disposition would indicate whether he was in fact willing to undergo treatment.

¶6        The court heard renewed recommendations at the deferred disposition.  The probation officer and the guardian ad litem acknowledged residential treatment as a possibility, but the probation officer reaffirmed his recommendation for commitment, and the guardian ad litem expressed concerns about residential treatment.  An updated psychological evaluation also recommended commitment.  The updated disposition report discussed commitment as a "last chance for rehabilitative services" and as a way to hold Fernando accountable for his delinquent conduct, emphasizing his numerous incident reports; his continued drug abuse and gang involvement; his complete disregard for authority; and his previously adamant resistance to residential treatment.  In addition, the report suggested that "[r]elease from secure care may be based on [Fernando's] . . . probability to no longer pose a risk to the community."  A new staffing summary provided: "Fernando continues to exhibit a pattern of behavior that is aggressive and violent. . . .  Fernando is a danger to himself and others and his need for supervision now requires him to be committed to the [ADJC]."  And an earlier information report likewise noted that "Fernando places both himself and the community in danger by the lifestyle he chooses to live."

¶7        On the other hand, the state and defense counsel recommended placement in a residential treatment center, and Fernando in turn reiterated his interest in receiving treatment.  In the end, "[b]ased on the information presented," the court revoked probation and ordered Fernando, then 16, committed to ADJC until his 18th birthday, with a

requirement that he serve at least 30 days in a locked facility. Fernando timely appeals.

**STANDARD OF REVIEW**

**¶8**		"The juvenile court has broad discretion to determine an appropriate disposition for a delinquent juvenile" and "[w]e will not alter that disposition absent an abuse of discretion." *In re Niky R.*, 203 Ariz. 387, 390, ¶ 10, 55 P.3d 81, 84 (App. 2002). In the analogous context of adult sentencing, "[a]n abuse of discretion . . . is characterized by capriciousness, arbitrariness or by failure to conduct an adequate investigation into facts necessary for an intelligent exercise of the court's sentencing power." *State v. Grier*, 146 Ariz. 511, 515, 707 P.2d 309, 313 (1985). We view the facts in the light most favorable to sustaining the juvenile court's orders and resolve all reasonable inferences against Fernando. *See State v. Kiper,* 181 Ariz. 62, 64, 887 P.2d 592, 594 (App. 1994); *In re John M.*, 201 Ariz. 424, 426, ¶ 7, 36 P.3d 772, 774 (App. 2001).

**DISCUSSION**

**¶9**		Fernando contends that the juvenile court abused its discretion by committing him to ADJC rather than placing him in secure residential treatment. Specifically, Fernando alleges that the court (1) failed to understand that secure residential treatment existed as an alternative to commitment; (2) relied on an inaccurate number of incident reports in its disposition; and (3) failed to consider the Commitment Guidelines before ordering commitment.

I.	UNDERSTANDING OF THE COMMITMENT ALTERNATIVES

**¶10**		Fernando's contention that the court failed to understand that lockdown residential treatment was available is premised on the court's remarks during disposition. At the July 19 hearing, the following exchange took place:

> [FERNANDO]:	. . . . I didn't see it back then that I needed help and now I do. I see that I need help. I'm willing to wait as long as I can just to get treatment. I can go to a lock-down treatment center if you guys want me to.

> THE COURT:	Well, I don't think that we have a lock-down treatment center, do we?

> [PROBATION]: Well, it's RTC [Residential Treatment Center] like Park Place and RDI.
>
> THE COURT: Okay.

And at the August 13 disposition, the court responded to Fernando's expressed interest in residential treatment:

> THE COURT: Well, treatment might work out for you if you stayed in one place long enough to be able to take advantage of it. But, I mean, when I look through your profile or your referral history and you have 9 to 12 citations or incidents of runaway --

Fernando interrupted the court and continued:

> [FERNANDO]: Well, like, you ask me, like, send me to a lock-down treatment center or something like that, you know what I mean? I don't need home passes or anything. You know, how you -- those kids that get home passes into treatment center?
>
> Like, I know I have a history of running and I know you guys, like, probably want me in one, like -- because you guys think I'll run away or you has . . . to send me a lock-down treatment center, you know, without no -- no, like, you know what I mean, like, visits, like, going to, like, on the weekends and stuff how some people get for the weekends?
>
> THE COURT: I understand that.
>
> [FERNANDO]: Light duty. Like --
>
> THE COURT: No. I understand what you're saying. It -- unfortunately, Park Place is not that kind of a facility. . . .
>
> I mean, there's just no other community-based alternatives that are appropriate in the case any longer.

¶11 Fernando's argument relies on *Grier*. In *Grier*, 146 Ariz. at 515, 707 P.2d at 313, our supreme court held that a sentence must be set aside if the defendant can show: "(1) that the information before the sentencing court was false or misleading and, (2) that the court relied on

the false information in passing sentence." The court reasoned that "[c]onvicted defendants have a due process right to a fair sentencing procedure which includes the right to be sentenced on the basis of accurate information." *Id.*

¶12 Although Fernando concedes that the parties in this case presented accurate information to the court regarding the availability of lockdown residential treatment, he argues that the reasoning from *Grier* still applies. He contends that the court did not correctly understand the information presented to it and then relied upon its flawed understanding in ordering commitment rather than placement in secure residential treatment. According to Fernando, even if the court seemingly learned that Park Place was an available lockdown treatment center at the July 19 hearing, its statement that "Park Place is not that kind of a facility" at the August 13 disposition demonstrates that it ordered commitment "under the mistaken belief that Park Place was not a secure treatment center."

¶13 However, Fernando does not identify any part of the record in which the court relied on this supposed misunderstanding in its disposition. To the contrary, the record reflects that the court understood that secure residential treatment centers were available at the July 19 hearing and decided to defer disposition precisely because it wished to consider them as an alternative to commitment. It was for that reason the court asked the probation department to reevaluate its disposition recommendation, which the court told Fernando it would be inclined to follow. When the court ultimately ordered commitment, it explicitly did so based on its consideration of the provided recommendations and information. Nowhere beyond Fernando's personal interpretation of the court reporter's transcripts does the court appear to order commitment because it failed to understand that secure residential treatment was available. This case is thus unlike *In re Eric L.*, 189 Ariz. 482, 486-87, 943 P.2d 842, 846-47 (App. 1997), in which we remanded a restitution order because the transcript plainly indicated that the court awarded full restitution under the incorrect belief that it could not partially reduce it.

¶14 We therefore conclude that the juvenile court's disposition was neither arbitrary nor capricious, but considered, fully informed and well within its discretion.

## II.    RELIANCE ON THE NUMBER OF INCIDENT REPORTS

¶15    Fernando's contention that the juvenile court relied on an inaccurate number of incident reports is also based on the court's statements. The court addressed Fernando at the August 13 disposition:

> It looks like, just in the year 2013, there have been five warrants for your arrest. You spent over a 100 days in detention . . . and during those 100 days, according to probation, you had 63 incident reports. You've been on electronic monitoring. You've been on juvenile intensive probation.
>
> . . . .
>
> Based on the information presented, the court finds probation is no longer appropriate and it is ordered committing [you] to the [ADJC].

For the first time on appeal, Fernando asserts that the record fails to support the court's statement that he had 63 incident reports, and that the court erred by relying on this allegedly inaccurate number when it ordered him committed. According to Fernando, "[t]he court's specific mentioning of the number of incident reports . . . indicates this was a fact the court granted solid weight to in the decision to commit [him]."

¶16    We have reviewed the record and find no reversible error on this issue. The updated disposition report from August 6 shows that Fernando's actions in detention had until then generated 58 incident reports. In addition, the record contains an incident report dated August 7 and a probation department email explaining a separate incident on August 9. The record is silent as to how many additional incident reports, if any, Fernando accumulated before the August 13 disposition, but it clearly shows that he had 60 incident reports as of August 9. Even assuming the court inaccurately believed that he had accrued three more reports at disposition, an issue we need not decide, Fernando has failed to carry his burden of showing how this alleged discrepancy caused him any prejudice. *See In re Natalie Z.*, 214 Ariz. 452, 455, ¶ 7, 153 P.3d 1081, 1084 (App. 2007) (requiring juvenile to establish "fundamental and prejudicial error . . . to justify a reversal of her adjudication based on a claim she failed to raise below"); *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20, 115 P.3d 601, 607 (2005) ("Fundamental error review . . . applies when a defendant fails to object to alleged trial error. . . . To prevail under this

standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice."). There comes a point at which the number of incidents so far surpasses the limits of reason that a minor inaccuracy in the number could not conceivably have changed the result. Sixty reports falls well beyond this point. We also reject Fernando's position, advanced without reference to any authority, that "[i]nformation-only reports are not behavior based, and should not concern the court at disposition."[1] *See* Ariz. R.P. Juv. Ct. 32(E)(3) (providing that during a probation violation hearing, "[t]he court may admit *any* reliable evidence not legally privileged" (emphasis added)).

## III.    CONSIDERATION OF THE COMMITMENT GUIDELINES

**¶17**        Failure to consider the Commitment Guidelines before ordering commitment to ADJC is an abuse of discretion. *See Niky R.*, 203 Ariz. at 390, ¶¶ 10-11, 55 P.3d at 84. But the Commitment Guidelines do not otherwise constrain the court's discretion to determine whether commitment is a proper disposition in a delinquency case. *Id.* at ¶ 12; *see also In re Melissa K.*, 197 Ariz. 491, 495, ¶ 14, 4 P.3d 1034, 1038 (App. 2000) ("A juvenile court is not required to follow the guidelines, but it must consider them in making disposition.").

**¶18**        The Commitment Guidelines advise the juvenile court to:

> a. Only commit those juveniles who are adjudicated for a delinquent act and whom the court believes require placement in a secure care facility for the protection of the community;
>
> b. Consider commitment to ADJC as a final opportunity for rehabilitation of the juvenile, as well as a way of holding the juvenile accountable for a serious delinquent act or acts;
>
> c. Give special consideration to the nature of the offense, the

---

[1]        Fernando correctly points out that the August 6 disposition report does not specify how many of his incidents resulted in physical restraint or confinement as opposed to an information-only report. But the report does reveal that 12 out of 19 incident reports generated between July 16 and August 6 concerned his behavior problems or destruction of county property.

level of risk the juvenile poses to the community, and whether appropriate less restrictive alternatives to commitment exist within the community; and

d. Clearly identify, in the commitment order, the offense or offenses for which the juvenile is being committed and any other relevant factors that the court determines as reasons to consider the juvenile a risk to the community.

Ariz. Code Jud. Admin. § 6-304(C)(1). We have interpreted these guidelines to require the juvenile court to consider "(1) protection of the community; (2) accountability; and (3) least-restrictive alternatives to ADJC." *Niky R.*, 203 Ariz. at 391, ¶ 15, 55 P.3d at 85. Additionally, A.R.S. § 41-2816(A) provides that commitment is appropriate for "youth who pose a threat to public safety [or] who have engaged in a pattern of conduct characterized by persistent and delinquent offenses that, as demonstrated through the use of other alternatives, cannot be controlled in a less secure setting."

¶19 In *Niky R.*, a juvenile appealed his commitment to ADJC, arguing that the court "failed to explore all alternatives to commitment" and that there was insufficient "evidence showing that [he] posed a significant risk to the community." 203 Ariz. at 390, ¶ 10, 55 P.3d at 84. In affirming the disposition, we focused on the fact that the juvenile had been under court supervision for more than three years, had run away, continued to commit delinquent acts, tested positive for marijuana and failed to participate in rehabilitation programs. *Id.* at 392, ¶ 22, 55 P.3d at 86. There was also evidence that the juvenile "was a danger to himself and the community" and that he "was violent, sold and used drugs, and had no regard for the property of others." *Id.* We concluded that the court did not abuse its discretion by "hold[ing] the [juvenile] accountable for his conduct and commit[ting] him to ADJC." *Id.* at ¶ 23.

¶20 In this case, Fernando similarly argues that the court disregarded the Commitment Guidelines, and in particular that it failed to consider whether secure residential treatment would be an appropriate less restrictive alternative for "a non-violent misdemeanor offender with no serious adjudications." Fernando's argument rests on his assertions that "[t]he court [did] not mention the guidelines in the hearing or while ruling," and that the court could not have considered secure residential treatment as an alternative to commitment "because [it] did not know secure residential treatment was available."

9

**¶21**　　　　We do not agree with Fernando's argument. First, "courts should not apply the guidelines in a mechanical fashion but determine whether, under the unique circumstances of the particular juvenile, commitment to ADJC is appropriate." *Id.* at 390, ¶ 13, 55 P.3d at 84. It is not our role to prescribe how the individual factors weigh in the balance of the court's discretion. *See In re James P.*, 214 Ariz. 420, 425, ¶ 24, 153 P.3d 1049, 1054 (App. 2007) (reviewing court "will not reweigh the evidence"). Second, because "[w]e assume that judges follow and apply the law," we have held that "[n]either the new guidelines, the statute [A.R.S. § 41-2816], nor our prior decisions require specific findings, or a record showing, that the trial judge has 'explored all alternatives' to ADJC prior to an adjudication committing a juvenile to ADJC." *Niky R.*, 203 Ariz. at 392, ¶ 21, 55 P.3d at 86. *See also In re Maricopa Cnty., Juv. Action No. JS-3594*, 133 Ariz. 582, 585, 653 P.2d 39, 42 (App. 1982) ("[T]rial court will be deemed to have made every finding necessary to support the judgment."). And third, as discussed above, it is reasonable to infer from the record before us that the court considered secure residential treatment as an alternative to commitment.

**¶22**　　　　Though the court here did not explicitly reference the Commitment Guidelines in making its decision, we find no abuse of discretion. In fact, the court clearly stated that it ordered commitment based on its consideration of the information presented, which revolved around the appropriateness of residential treatment as an alternative to commitment, Fernando's danger to others and himself, and commitment as an approach to holding Fernando accountable and as a last chance for rehabilitation -- all the factors that the Commitment Guidelines advise the court to contemplate. *See* Ariz. Code Jud. Admin. § 6-304(C); *Niky R.*, 203 Ariz. at 391, ¶ 15, 55 P.3d at 85. The court's finding that "[c]ommitting [Fernando] to the [ADJC] . . . is the least restrictive alternative available" further supports our conclusion that the court did not fail to consider the Commitment Guidelines. On this record, the court could properly find that Fernando posed a threat to the community and that he had engaged in repeated delinquent offenses that could not be controlled through less restrictive alternatives such as probation, electronic monitoring or residential treatment. *See* A.R.S. § 41-2816(A).

## CONCLUSION

¶23      For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: MJT